# Richmond.

## JOHNSON v. COMMONWEALTH.

### January 25, 1906 .

1. CRIMINAL LAW—*New Trial—Evidence Certified—Rule of Decision.* —Where the evidence in a criminal case is certified, and not the facts, the case is heard in this court as on a demurrer to the evidence by the plaintiff in error.

2. CRIMINAL LAW—*New Trial—After-discovered Evidence.*—In order to justify the granting of a new trial on the ground of after-discovered evidence, the evidence must have been discovered since the trial. It must be evidence that could not have been discovered before the trial by the exercise of ordinary diligence. It must be material in its object, and such as ought, on another trial, to produce an opposite result on the merits, and it must not be merely cumulative, corroborative or collateral.

3. CRIMINAL LAW—*New Trial—After-discovered Evidence—Case at Bar.* In the case at bar the evidence as to the identification of the prisoner as the perpetrator of the crime charged in the indictment is very unsatisfactory, and the uncontradicted testimony of a detective, who was examined for the State, as to material facts tending to connect the prisoner with the commission of the crime, must have produced upon the minds of the jury impressions very injurious to the prisoner. The discovery after the trial of an intelligent, disinterested witness of high character, whose testimony, if true, indicates a purpose on the part of the detective to compass the conviction of the accused upon fabricated evidence, renders it proper to grant a new trial for after-discovered evidence.

Error to a judgment of the Circuit Court of Henrico county, on an indictment for rape.

*Reversed.*

VOL. CIV—111

The opinion states the case.

*Edgar B. English,* for the plaintiff in error.

*Attorney-General Wm. A. Anderson,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

At the June term, 1905, of the Circuit Court of Henrico county, the plaintiff in error, Austin Johnson, was indicted, tried and convicted of the crime of rape, alleged to have been committed by him upon the person of a female child of the age of ten years; and his punishment was fixed by the jury at death.

The prisoner moved the court to set aside the verdict and grant him a new trial on two grounds: (1) Because the verdict was contrary to the law and the evidence; and, (2) for after-discovered evidence. But the court overruled the motion, and pronounced judgment upon the verdict, to which judgment a writ of error was awarded by this court.

The evidence in the case (not the facts) having been certified in accordance with the injunction of section 3484, Va. Code, 1904, the rule of decision in this court in considering the evidence must be as on a demurrer to the evidence. The effect of that rule is too familiar to demand repetition, and conformably to its requirement we feel constrained to sustain the action of the trial court in overruling the motion of the prisoner to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence.

But, in that connection, it is proper to observe, that while in obedience to the explicit mandate of the statute we have been obliged to uphold the ruling of the court upon the first assign-

ment of error, nevertheless we are painfully conscious of the unsatisfactory state of the proof with regard to the identification of the prisoner as the perpetrator of the atrocious crime of which he stands convicted. This allusion to the inconclusive character of the evidence on behalf of the Commonwealth upon that subject is rendered pertinent by reason of the correlation of the two assignments of error.

In considering the last assignment, it will not be necessary to examine all the evidence in the case, but only such parts of it as tend to make clear our reasons for the conclusion which we have reached.

It appears that the crime was committed about dusk on May 6, 1905; and upon a general description, given by the child, of her assailant, that he was a dark man with thick lips, and wore a black slouch hat, a dark blue shirt with black pearl buttons, a dark coat, and shoes with large holes in the tips, the accused was arrested that night and taken into the presence of the child for identification. She was twice asked if he was the guilty party, and each time indicated by a shake of her head that he was not. Thereupon, the officers, having learned that a small negro girl, Cornelia Horsley, was in company with the child at the time she was enticed into an alley-way by her assailant, (upon the pretext that his sister wanted to buy some of the cologne that she was peddling) took the prisoner to her home, and on being interrogated as to whether he was the man who lured the child off, she replied: "No, that is not the man, that is Austin Johnson. The man who met us this evening was a tall, black man, who had on a black slouch hat and gray coat and blue shirt, dark pants and tan shoes." It was also in evidence that Austin Johnson was well known to Cornelia Horsley, having formerly been in her father's employment—a circumstance which adds to the probative value of her testimony

on the question of identification, and renders improbable the theory that the prisoner would have enticed his victim from the presence of a person to whom he was thoroughly known, and whose testimony he might reasonably have anticipated would lead to his detection and conviction. After hearing the statement of Cornelia Horsley, the officers naturally concluded that a mistake had been made and released the prisoner. Subsequently, however, on the same night, one of the officers received information that the child had said that she was frightened when Johnson was brought in her presence, and wanted to see him again, and believed that he was the man who assaulted her. On the following morning two detectives went to the child's home, and learning that she believed Johnson to be the guilty party, they set out to arrest him. They discovered the accused in a shanty at a brick-yard in the vicinity, where he was accustomed to stay at night with a friend, lying, as they say, in a bunk, and feigning to be asleep. Continuing, one of those detectives testified that while his companion had gone to the house of the owner of the brick-yard to telophone for the patrol wagon, he observed the accused get up from the bunk where he was lying and go to the fire-place and kindle a fire; that he then went to the corner of the room, pulled down some cloth from the loft above, which looked like a garment of some kind, made a bundle of it, put it in the fire and burned it up—"He burned two pieces, dirty looking, looked like a shirt or two shirts. It might have been two pairs of drawers." The witness exhibited to the jury two pieces of burnt cloth, one piece about the size of a quarter of a dollar, and the other some two inches square, which he testified that he had extracted from the ashes of the fire made by the prisoner. Another witness for the prosecution, who claimed to be an expert on the subject, stated that, in his opinion, the burnt pieces of cloth were "either

the ribs of a pair of balbriggan drawers, or the ribs of an underwear shirt." Soon after the alleged burning of these articles the officers appeared on the scene, and arrested the accused and handcuffed him; and he was again taken into the child's presence and identified by her as her assailant. He was indicted June 3, 1905, and a week later put upon trial.

After his conviction, the prisoner made affidavit that since the trial he had discovered material evidence affecting the merits of the case, which he could not have obtained by due diligence before or during the trial; and also filed affidavits of a number of persons setting forth the after-discovered evidence upon which he relied. We shall only notice the affidavits of two of these witnesses, J. T. Herrin and W. J. Ready.

The affidavit of Mr. Herrin is to the effect that he is the managing overseer of the "West End Brick Yard," located near the "New Reservoir;" that a private detective came to his residence on Sunday afternoon, May 7, 1905, and requested affiant to accompany him to a shanty some thirty or forty yards distant, where he desired him to see a negro, who was there asleep, and ascertain if he belonged in the yard; that he (the detective) thought he was the same negro who was suspected of having perpetrated a rape upon a little white girl the day before; that affiant found the accused lying on a bunk asleep, and awoke him and asked what he was doing there. The affidavit proceeds: "I will state most positively that there was no fire of any kind in the shanty house, and that there were no signs of any fire having been there; and that nothing was said by Johnson (the detective who testified about the accused burning the bundle of underwear), or any one else about there having been any fire there. I remember distinctly that the prisoner accompanied the officers very willingly, making the remark, 'Yes, I will go anywhere with you,' addressing the officers. . . .

That on the next day, Monday, Duke and Johnson (the detectives) came to the yard and requested permission to go into said shanty house. The key was in my possession, and I accompanied them to the said house, and into the same; that they examined into a small accumulation of old ashes in the fire-place —a large open fire-place—and took therefrom a piece of burnt cloth, which resembled a piece of burnt ribbon, and which they said was a piece of necktie; that is all they took from the fire-place. I know nothing of any burned pieces of underwear found there that day, and taken from the fire-place. There were certainly no burnt pieces of underwear found that day, and none to my knowledge in the fire-place."

Affiant W. J. Ready, the proprietor of the brick-yard, deposed, that he had known J. T. Herrin for ten years; that he had been in his employment as managing overseer of his brick-yard and plant for fifteen months; and that he is a man of "the highest integrity of character."

The rule governing the granting of new trials for after-discovered evidence is well settled by the authorities in this jurisdiction, and is succinctly stated in the case of *Nicholas* v. *Commonwealth*, 91 Va. 741, at page 753, 21 S. E. 364, at p. 368, as follows:

"1st. The evidence must have been discovered since the trial. 2nd. It must have been evidence that could not have been discovered before the trial by the exercise of reasonable diligence. 3rd. It must be material in its object, and such as ought, on another trial, to produce an opposite result on the merits. 4th. It must not be merely cumulative, corroborative, or collateral." 4 Min. Inst. Pt. 1, 758, 759; *Wynne* v. *Newman's Admr.*, 75 Va. 817; *Whitehurst* v. *Comth.* 79 Va. 556. See to the same effect the cases collected in a note to *St. John's ex'ors* v. *Alderson*, 32 Gratt. (Va. Rep. Ann.) 140.

Applying these principles to the case in judgment, we are of opinion that the accused is entitled to new trial.

The injurious impression that must have been wrought upon the minds of the jury, in their effort to reconcile the conflicting evidence in respect to the identification of the prisoner as the guilty party, by the uncontradicted testimony of the detective, that the day after the crime was committed the accused was discovered in the act of burning his underclothing, the condition of which it was believed would incriminate him, can hardly be overstated. And, conversely, the testimony of an intelligent, disinterested witness of high character, which, if true, indicates a purpose on the part of the detective to compass the conviction of the accused upon fabricated evidence, would reasonably have exerted a favorable influence with the jury in his behalf.

Inexpressibly horrible as was the crime perpetrated upon this unfortunate child, it would be still more baleful to endeavor to expiate it either by taking the life of an innocent man, or of one whose guilt had not been established with that degree of certainty which the law in its wisdom has ordained.

For these reasons, the verdict of the jury must be set aside, the judgment of the Circuit Court reversed, and the case remanded for a new trial.

*Reversed.*