## Richmond

## JOHNSON V. COMMONWEALTH.

### November 20, 1919.

1. NEW TRIALS—*Newly Discovered Evidence—Cumulative Evidence —Testimony as to Search of Car in Prosecution for Transporting Intoxicating Liquors—Case at Bar.*—In a prosecution for the transportation of intoxicating liquor, accused asked for a new trial on the ground of newly discovered evidence. The chief testimony against the accused was that of a prohibition officer, who testified that he searched the car in which it was alleged that the liquor was transported at Basic City and saw twenty-five or thirty quarts of liquor in it. The newly discovered evidence was that of a garage keeper near Strasburg, that he searched the car earlier in the night in the absence of accused and found no liquor in it. The only objection raised to this evidence was that it was merely cumulative, it being conceded that, in other respects, it measured up to the requirements of such evidence as would entitle the accused to a new trial.

   *Held:* That the evidence of the garage keeper was not cumulative.

2. NEW TRIALS—*Newly Discovered Evidence—Cumulative Evidence.* —Evidence is said to be cumulative when it is of the same kind, to the same point, and the discovery of such evidence after verdict is, as a rule, no ground for a new trial.

3. NEW TRIALS—*Newly Discovered Evidence—Cumulative Evidence —Ground for Exclusion.*—Its exclusion, however, is not by virtue of any independent rule, but rather as a corollary of the rule that the newly discovered evidence must be such as would probably produce a different result on the merits. Generally, evidence that is merely cumulative, corroborative, or collateral, ought not and probably would not produce a different result on the merits, and for that reason is excluded.

4. NEW TRIALS—*Newly Discovered Evidence—Cumulative Evidence —When Ground for a New Trial.*—If the court can see that a different result on the merits ought or probably would be reached if certain evidence is received, it may, in such exceptional cases, furnish ground for a new trial, even though it is merely cumulative.

5. NEW TRIALS—*Newly Discovered Evidence—Cumulative Evidence —When Ground for a New Trial.*—Where, in the light of the after-discovered evidence, grave doubt is entertained as to the correctness of the verdict, and it seems probable that if the newly discovered evidence had been before the jury a different verdict would have been reached on the merits, the verdict should be set aside. While it is desirable that there should be an end of litigation with as little delay and expense as possible, this object is subordinate to the great end of litigation, to wit, a correct decision of the cause on its merits.

6. NEW TRIALS—*Cumulative Evidence—Case at Bar.*—The chief point in the instant case, and the one which it was essential for the Commonwealth to prove, in order to convict the defendant, was the presence of ardent spirits in the car. The determination of this question was submitted to the jury upon the testimony of the prohibition officer on the one side and the defendant on the other.

   *Held:* That if the accused could show that there was no liquor in the car before reaching Waynesboro, the point of search, and none was found in it after passing that point on a continuous journey, it would tend strongly to sustain the defense that there was no liquor in the car at Waynesboro.

7. NEW TRIALS—*Cumulative Evidence—Corroboration of Accused.*— After-discovered testimony of a disinterested witness in corroboration of the testimony of accused, even if cumulative, may be ground for a new trial.

8. WARRANTS—*Affidavit Signed in Blank.*—The conduct of a prohibition officer in signing affidavits not sworn to by him in blank upon which warrants were issued, and the action of justices in issuing warrants thereon, was highly reprehensible, and its repetition should not be permitted.


Error to a judgment of the Circuit Court of Augusta county.

*Reversed.*

The opinion states the case.


*L. Travis White, Timberlake & Nelson,* and *Curry & Curry,* for the plaintiff in error.

*John.R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

James N. Johnson, a youth nineteen years of age, was convicted of transporting intoxicating liquor in violation of the prohibition law. After sentence, but during the same term at which he was convicted, he moved for a new trial on the ground of after-discovered evidence, but the trial court overruled his motion and he excepted, and the case is brought here for review.

[1] If he was guilty, it was as principal in the second degree of Leo Kidd, who was principal in the first degree. Kidd and Johnson were intimate friends, and while Kidd lived at Hopewell, Va., he had employed Johnson to operate for hire one of several automobiles which he then owned. Kidd had been twice convicted of violating the prohibition law, but afterwards had volunteered in the American army, and was stationed at Camp Holabird, about five miles from Baltimore, and assigned to the Magneto and Carburetor Department. Shortly after Kidd entered this camp, Johnson moved to Baltimore and obtained employment as an automobile mechanic. They frequently saw each other in Baltimore. On November 23, 1918, Kidd obtained a leave of absence for two days. He states that he had certain automobile parts which he wished to return to Richmond, and other business there, and also wished to visit his mother who resided there, but fearing he might not be able to transact all of his business in the limited time, or that some accident might befall him, so that he could not return to camp in time, he requested Johnson to accompany him in his automobile. He states that his object was to get Johnson to drive the automobile back, in event that he had to

return by the railroad. Johnson assented, and they set out on the trip Saturday afternoon. Their route was up the Valley by way of Strasburg to Staunton, and thence by Basic and Charlottesville to Richmond. When they arrived at Waynesboro, about two o'clock Sunday morning, the toll-gate was down, and they were halted by C. H. Falwell, an employee of the prohibition department, who had two assistants with him. Falwell poked a double barrel shotgun close up to Kidd's face and told him he was going to search his car. Kidd jumped out of the car, denied the right of search, and a colloquy ensued which need not be here repeated. Falwell says that during the colloquy he saw twenty or thirty quarts of "Cascade liquor" in the car. There was no light there except an ordinary incandescent lamp on the porch of the toll-house and a dash light in the car. About that time another car, a Hupmobile, came up within fifty or seventy-five yards, turned across the road and the occupants opened fire on the officers, who then left Kidd and went in pursuit of them. During the colloquy Kidd discovered that he had lost a tire off the rear of his car and stated that he was going back to Staunton to look for it, as he had noticed that it was still on the car when they passed through Staunton. He turned his car around and started on the return trip to Staunton while the officers were pursuing the occupants of the Hupmobile. He made the trip, but not finding his tire, resumed his journey to Richmond. On his return trip he was not challenged at Waynesboro, but when he reached the toll-gate on the east side of Basic City, about one mile beyond Waynesboro, the gate was down and he was again challenged by Falwell, and here again another colloquy ensued, but Kidd was finally permitted to proceed after Falwell had taken the number of his car. Falwell then telephoned to Charlottesville and had the police there arrest Kidd and Johnson the next morning. Falwell went to Charlottesville, and with

others brought Kidd and Johnson back to Staunton, in irons, where they were subsequently indicted and tried. Separate indictments were found against Kidd and Johnson, and both were tried at the same term of the court. Johnson was first tried and convicted, and at a subsequent day of the term Kidd was tried and acquitted. The chief witness against Johnson was Falwell, and, when questioned as to the part that Johnson took in the first colloquy, he testified, "I didn't see him do anything, I never heard him open his mouth," and it is not claimed that he said or did anything at any other time. On the trial of Kidd, a witness, Alfred Bly, testified that he runs a garage on the Valley Turnpike, near Strasburg, and that on the night of the alleged offense, between ten and eleven o'clock, he was called by Kidd, and that Johnson was with him in a Cadillac roadster, which he identified as the one which Kidd was running when held up at Waynesboro, and that "they wanted to get some oil and gas and have a tire fixed." It was cold and the occupants of the car went into the garage to warm by the fire while the repairs were being made. A tube had burst and had a slit in it. Kidd informed Bly that he would find another tube in the car. Bly testified that he took a lantern and searched the car for the tube, that he first went to the back of the car, but didn't find the tube, and then went around to the front of the car and finally found it. He testifies that if there had been any liquor in the car he would have seen it, but that there was none in it. He further testifies that he had shown Johnson to the toilet, and that the latter did not hear the conversation between him and Kidd and knew nothing of his searching the car for the tube. This is the testimony which Johnson relies on as after-discovered, and he makes affidavit that he never knew or heard of it until after his trial and conviction. The only objection raised to it is that it is merely cumulative. It is practically conceded that, in other respects, it measures

up to the requirements of such evidence as would entitle the accused to a new trial.

[2-5] Evidence is said to be cumulative when it is of the same kind, to the same point, and the discovery of such evidence after verdict is, as a rule, no ground for a new trial. Its exclusion, however, is not by virtue of any independent rule, but rather as a corollary of the rule that the newly discovered evidence must be such as would probably produce a different result on the merits. Generally, evidence that is merely cumulative, corroborative, or collateral, ought not and probably would not produce a different result on the merits, and for that reason is excluded, but if the court can see that a different result on the merits ought or probably would be reached, if the evidence is received, it may, in such exceptional cases, furnish ground for a new trial, even though it is merely cumulative. There are few cases in which some merely cumulative evidence may not be discovered after the trial, and if such discovery furnished ground for a new trial litigants would not be diligent in the preparation of their cases, and there would be no end of litigation. Public policy demands a prompt administration of justice, and this could not be obtained if verdicts could be so easily set aside. At the same time, the object and aim of all litigation is the attainment of substantial justice, and where, in the light of the after-discovered evidence, grave doubt is entertained as to the correctness of the verdict, and it seems probable that if the newly-discovered evidence had been before the jury a different verdict would have been reached on the merits, the verdict should be set aside. While it is desirable that there should be an end of litigation with as little delay and expense as possible, this object is subordinate to the great end of litigation, to-wit, a correct decision of the cause on its merits. *Wolf* v. *Mahan,* 57 Tex. 171.

In *State* v. *Townsend,* 7 Wash. 462, 35 Pac. 367, all of

the witnesses at the trial were Indians, but after the trial a white witness to the same facts was discovered and a new trial was awarded. A similar situation may at any time arise where all the witnesses to a material fact were ignorant and illiterate, and a witness of intelligence and character to the same fact is subsequently discovered.

In *Shuman* v. *Dolan,* 24 S. D. 32, 123 N. W. 72, it is said that "the rule applicable to ordinary cumulative testimony on motion for a new trial on the ground of newly-discovered evidence is not applicable as applied to a case where a party to the action is the principal witness. The rule as to cumulative evidence was adopted at a time when parties to an action were not permitted to testify as witnesses therein. It is a well-known fact, of which this court will take judicial notice, that jurors generally view with more or less suspicion the testimony of an interested party in the case, and naturally attach to it much less weight than would be given to the testimony of a disinterested witness. To say, therefore, that the question of cumulative testimony applies to testimony tending to corroborate the evidence of a party to the action constitutes cumulative testimony, would often result in great injustice being done to such parties. The fact, therefore, that the testimony of Lyons would tend to corroborate the testimony of the defendant, and therefore constitute cumulative evidence within the meaning of that term as used in the cases, would, in our opinion, work great injustice."

In *Johnson's Case,* 104 Va. 881, 52 S. E. 625, the holding of this court is thus summarized in the syllabus: "In the case at bar the evidence as to the identification of the prisoner as the perpetrator of the crime charged in the indictment is very unsatisfactory, and the uncontradicted testimony of a detective, who was examined for the State, as to material facts tending to connect the prisoner with the commission of the crime, must have produced upon the

minds of the jury impressions very injurious to the prisoner. The discovery after the trial of an intelligent, disinterested witness of high character, whose testimony, if true, indicates a purpose on the part of the detective to compass the conviction of the accused upon fabricated evidence, renders it proper to grant a new trial for after-discovered evidence."

In *Barsa* v. *Kator*, 121 Va. 290, 93 S. E. 613, a new trial was granted because the after-discovered evidence was more specific and circumstantial than that given on the trial, and the court thought a different result ought to be reached on the merits. See also, *Preston* v. *Otey*, 88 Va. 491, 14 S. E. 68; *Holton* v. *State*, 9 Ga. App. 414, 71 S. E. 599.

[6, 7] In the case at bar, the only evidence offered on behalf of the Commonwealth to prove that there were ardent spirits in the car was the testimony of Falwell, the employee of the Prohibition Department, the truth of which was vigorously assailed. Neither of his assistants saw any, and none was found in the car at Charlottesville when the arrest was made. The only testimony offered by the defendant to contradict Falwell was that of the defendant himself. The chief point in the case, and the one which it was essential for the Commonwealth to prove, in order to convict the defendant, was the presence of ardent spirits in the car. The determination of this question was submitted to the jury upon the testimony of Falwell, on the one side, and of the defendant on the other. The defendant was in company with Kidd, who had been twice before convicted of violating the prohibition law, and who was an intimate friend and acquaintance, and it was natural that the jury should credit the statement of Falwell rather than that of Johnson, who was interested to secure his own acquittal. If, therefore, Johnson could show that no whiskey was in the car before reaching Waynesboro and none

was found in it after passing that point on a continuous journey, it would tend strongly to sustain the defense of Johnson that there was no whiskey in the car at Waynesboro. No evidence was offered at the trial to show that the car had been closely examined and no whiskey found therein at Strasburg, or at any other point before reaching Waynesboro, and the existence of such evidence was unknown to Johnson, and the testimony of Bly as to his examination of the car at Strasburg cannot be said to be merely cumulative of any evidence offered at the trial, but even if it were, it was the testimony of a disinterested witness in support of the defendant alone who was on trial for a criminal offense, and whose testimony would, on that account, be discredited when opposed to the positive statements of Falwell, who was supposed to have no interest in his conviction. The testimony of Bly was offered in support of the testimony of Johnson only, and not of any other witness, nor of any other evidence offered in the case; and under the circumstances hereinbefore set forth, the trial court should have awarded the new trial asked for.

We do not intend to break down the salutary rule so often enunciated by this court, that new trials should not as a rule be granted for newly discovered evidence which is merely cumulative, corroborative, or collateral, but rather to explain its meaning, especially as applied to the facts of the case before us, and also to point out that the ends of justice may, under peculiar circumstances, require that exceptions to the rule shall be recognized.

As the judgment will have to be reversed for the error hereinbefore pointed out, it will be unnecessary to consider other errors assigned.

[8] It developed on the trial that the prohibition officer who attempted the arrest was in the habit of signing affidavits in blank upon which warrants were to be issued, and that in the case at bar the warrant for the arrest of the defendant charged him with speeding and resisting

an officer, and was issued upon a blank signed by such officer not sworn to by him, and left blank as to the offense. The officer testified that he often signed warrant's in blank, meaning, we presume, affidavits upon which warrants were to be issued by a justice, and that his signature was attached to the warrant of arrest in the case at bar, but that he "never swore out any warrant," and did not know any more about it than the counsel who was interrogating him. Of course, no justice had a right to issue a warrant based on such papers which were in no sense affidavits. The conduct of the officer in signing such alleged affidavits, and of justices in issuing warrants thereon, was highly reprehensible, and its repetition should not be permitted. While we recognize the fact that the officers charged with the enforcement of the prohibition law have frequently to deal with criminals of desperate character, and have to act quickly, they should at all times act legally. An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute and tends to the subversion of peace and good order. Apparently, the phohibition statute furnishes the officers charged with its enforcement with all necessary power, but if it is defective in this respect, powers not granted should not be assumed, and application should be made to the legislature for such powers as are needed to secure the proper enforcement of the law. Lawlessness cannot be subdued by lawlessness, but only by the prompt enforcement of the law by the State, acting through its officers within the powers conferred upon them. The usurpation of power seldom, if ever, commands respect.

For the reasons hereinbefore given, the judgment of the Circuit Court of Augusta county must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*