# Richmond.

## L. Hodnett v. City of Danville.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Hugh T. Williams* and *E. Walton Brown*, for the plaintiff in error.

*John W. Carter, Jr.*, for the defendant in error.

WEST, J., delivered the opinion of the court.

L. Hodnett was convicted of unlawfully driving an automobile on the streets of the city of Danville while he was intoxicated, and sentenced to serve six months in jail and to pay a fine of $100.00. To that judgment this writ of error was allowed.

The material facts, as appears from the evidence for the Commonwealth, are: On the afternoon of Sunday, August 14, 1927, L. Hodnett called on Cabell Richard-

son, Nash dealer, who delivered to him a new Nash automobile to drive that afternoon. Hodnett left Richardson's place in the new car about 2:15 p. m., and while driving along Upper street, which was unpaved, about 3 p. m., the car struck a manhole and stopped. A few minutes later officers Kessler and Fields appeared and arrested him, while seated in the car, on the charge of driving an automobile while intoxicated. These officers testified upon the trial that Hodnett was intoxicated, and when he got out of the car was not able to walk straight, and that his appearance generally was that of a drunken man. Fields also testified that Hodnett had a peculiar odor on his breath, but he did not think it was liquor.

G. W. Lambert testified that Hodnett appeared to be scared and nervous. He could not speak distinctly when he undertook to talk, but was not staggering. Rawley Hall testified that he got within a few steps of Hodnett; that he looked very unusual and he thought he was drunk, but it was possible that his condition was caused by nervousness. J. L. Edwards, desk sergeant, testified that when he entered Hodnett's name on the blotter he appeared to be drunk and he smelled corn whiskey on his breath.

The facts appearing from the evidence for the defendant are: Cabell Richardson says at the time Hodnett left his place of business, about an hour before the accident happened, he saw nothing in his manner or speech to indicate that he had had a drink. Mrs. Bert Presnell says Hodnett was at her house just before the accident occurred, and there was nothing in his manner or speech to indicate he was intoxicated. Mrs. L. B. Bryant says that at the time of the accident, Hodnett was driving along the street in a normal manner and at a normal rate of speed, with his car under

complete control. Harper Chandler, keeper of the city jail, says when he received Hodnett in the jail he looked nervous but there was no odor of liquor on his breath and he had no appearance of being intoxicated. John Dix, a trusty at the jail, says when Hodnett was received at the jail he was in a highly nervous condition, but he did not detect the odor of liquor on his breath, and, in his opinion, he was not drunk. W. C. Talley, police officer, says about 4:30 o'clock the same afternoon he went to the jail to get Hodnett's store keys for his clerk, and Hodnett did not appear to be drunk, but looked to be very nervous. Dr. Henry Wiseman stated that he had been treating Hodnett for a highly nervous condition, and when he saw him the afternoon of the accident he was very nervous, but showed no indication of recent drinking. The doctor admitted that Hodnett's nervous condition was caused by excessive past drinking. Rev. J. W. Rustin said he struck the same obstruction which Hodnett struck, in coming down Upper street, and the city of Danville had paid him the damages occasioned by its negligence in permitting the pipe to be in the street. L. Hodnett, the defendant, testified that he went to the Leeland garage, at the request of the proprietor, Cabell Richardson, to try out a new Nash automobile, that neither prior to going to the garage, nor at any time that day, did he take a drink of whiskey or any other intoxicant; that he was driving the car in a careful manner at the time he struck the pipe in the middle of the street; that the bottom of the car scraped the pipe and he saw the car was injured and became very nervous.

When the verdict of the jury was returned, the defendant moved the court to set it aside because contrary to the law and the evidence, which motion the court overruled. Whereupon the defendant moved the

court to set aside the verdict and grant a new trial on the ground of after-discovered evidence. In support of the last motion, the defendant examined Sergeant J. L. Edwards, desk sergeant of the police force of the city of Danville, under oath, before the presiding judge, and Edwards testified "that he was mistaken in his testimony given on the trial of the case of *City of Danville* v. *Lane Hodnett;* that after refreshing his memory he found that he had been thinking of another case when testifying; that he was not in position to smell Lane Hodnett's breath when he was brought to the police station, and was unable to say anything either one way or the other as to there being the odor of liquor on his breath."

Petitioner practically admits that the court did not err in refusing to set aside the verdict as contrary to the law and the evidence and rests his right to a new trial upon the court's refusal to set aside the verdict of the jury upon the ground of after-discovered evidence.

In order for the after-discovered evidence to be a proper basis for granting a new trial, such evidence must—

"(1) Have been discovered since the former trial;

"(2) Be such as by reasonable diligence on the part of the defendant could not have been secured at the former trial;

"(3) Be material in its object, and not merely cumulative, corroborative and collateral; and

"(4) Be such as ought to produce, on another trial, an opposite result on the merits;

"(5) Go to the merits of the case, and not merely impeach the character of a former witness.

"Unless these circumstances concur a new trial is never granted on the ground of after-discovered evi-

dence, and even where they do concur a new trial is granted only with great reluctance and with special care and caution." 2 Barton's L. Pr., page 734.

The defendant had no reason to suspect the after-discovered evidence was in existence at the time of the trial and no amount of diligence on his part would have enabled him to secure it at that trial.

It is often a difficult question to determine whether after-discovered evidence is material or merely cumulative, corroborative and collateral. The after-discovered evidence, under consideration here, is material and goes to the heart of the case. If true the defendant was probably not intoxicated while driving the car; and if not intoxicated, he was not guilty of the charge for which he is being prosecuted. Whether the defendant is guilty of the charge for which he is being tried before a jury is always a question for the jury.

The after-discovered testimony contained in the affidavit of J. L. Edwards is not merely cumulative. While it tends to support the theory of the defense on the issue of intoxication, the kind and character of the facts contained therein are entirely dissimilar from the facts disclosed upon the trial. The evidence of Edwards on the trial was that the defendant was intoxicated and the witness smelt corn whiskey upon his breath, while the after-discovered evidence is that the witness was not in a position to smell defendant's breath when he was brought to the police station, and was unable to say anything either one way or the other, as to there being the odor of liquor on his breath. No other witness testified on the trial that the defendant had the odor of liquor on his breath.

In *St. John's Ex'rs* v. *Alderson,* 32 Gratt (73 Va.) 140, this court held that "in determining whether or

not evidence is cumulative, the courts must see if the *kind* and *character* of the facts offered and those adduced on the former trial are the same, and not whether they tend to produce the same effect. That it is their resemblance that makes them cumulative. And the facts may tend to prove the same proposition, and yet be so *dissimilar in kind* as to afford no pretence for saying they are cumulative.''

In Hilliard on New Trials, page 502, note A, this is said: ''Admissions and conversations of a defendant, in direct conflict with his testimony and with the theory of his defense are not impeaching but original evidence, citing *Alger* v. *Merritt*, 16 Iowa 121. Evidence which is specifically distinct and bears upon the issue is not cumulative, though it may be intimately connected with parts of the other testimony.''

In *Powell* v. *Commonwealth*, 133 Va. 756, 112 S. E. 661, 33 A. L. R. 541, the court said: ''The modern rule is not so strict. By the preponderance of authority it seems to be sufficient if the court has evidence before it which establishes the existence of the evidence relied on to show the perjury or mistake, in such a clear and convincing manner as to leave no room for doubt as to the existence of the evidence so relied on, and the court is satisfied that the evidence is not collusive; that it seems to be true, and ought, if true, to produce on another trial an opposite result on the merits.''

In the instant case, the record discloses nothing to indicate that the testimony contained in the affidavit of witness Edwards is untrue, or collusive, and made with the purpose of enabling the defendant to secure a new trial. The allegations contained in the affidavit are not contradicted and must be taken to be true.

The testimony on the question whether the defendant was intoxicated at the time he was driving the

car was so sharply in conflict on the first trial that the admission of the after-discovered evidence on a new trial, in lieu of the evidence which the witness gave upon the first trial, ought to produce a different result.

We are not unmindful of the general rule that if the court can fairly conclude that the jury would have come to the same conclusion had the perjured testimony been eliminated, a new trial will not be granted. But where, as in the instant case, we are unable to reach that conclusion, this rule has no application.

In Hilliard on New Trials, page 504, section 17, the author says: "But although the rule that a new trial will not be granted on the ground of newly-discovered cumulative evidence, is a rule that will be relaxed with great caution; yet it is said: 'The court ought not to shut their eyes to injustice on account of facility of abuse in cases of this sort.' " And, says the author: "It is sometimes held that they will not refuse a new trial on the ground of newly-discovered evidence for the reason that such evidence is cumulative merely, if it is sufficient to render clear that which before was a doubtful case. Or in a nicely balanced case. Or if it is conclusive. Or of such a character as *prima facie* to raise a strong probability that it will be decisive of the case."

In *Johnson* v. *Commonwealth*, 126 Va. 775, 101 S. E. 343, the law is stated thus: "The object and aim of all litigation is the attainment of substantial justice, and where, in the light of the after-discovered evidence, grave doubt is entertained as to the correctness of the verdict, and it seems probably that if the newly-discovered evidence had been before the jury a different verdict would have been reached on the merits, the verdict should be set aside. While it is desirable that there should be an end of litigation with as little delay

and expense as possible, this object is subordinate to the great end of litigation, to-wit, a correct decision of the cause on its merits."

For the reasons stated, the judgment complained of will be reversed, and the case remanded for a new trial in conformity with the views herein expressed.

*Reversed and remanded.*