# Richmond

Lewis L. Akers v. Commonwealth

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Browning, JJ.

*J. Bradie Allman* and *Carleton Penn*, for the plaintiff in error.

*John R. Saunders, Attorney-General*, and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The accused, a single man, was tried and convicted for seduction under promise of marriage.

It appears that the Honorable Beverley Berkeley, judge of the Law and Chancery Court of the city of Roanoke, was requested by the Honorable P. H. Dillard, judge of the Circuit Court of Franklin county, to try this case.

On the morning of April 17, 1930, Judge Berkeley appeared at the courthouse of Franklin county for the purpose of going into the trial. On motion of the accused, and for good cause shown, the case was continued until May 6th, and the accused was admitted to bail.

Pursuant to adjournment, on May 6th Judge Berkeley again appeared at the courthouse of Franklin county and the case was tried. After the jury had rendered an adverse verdict, the accused, for the first time, raised an objection to Judge Berkeley sitting, and moved to set the verdict aside on the grounds that he was not the judge of the Circuit Court of Franklin county; that no formal order had been entered by the regular judge of said court designating him to sit, nor had he been commissioned by the Governor for this purpose. The motion was overruled. This action constitutes the first assignment of error.

This contention in behalf of the accused renders it necessary to examine Code 1919, section 5898, as amended by laws 1928, chapter 236, which section covers every contingency which might prevent a judge from holding his own court. They may be classified thus:

(1) If the regular judge is absent, unable to attend, or fails to hold a term of his court, or a part thereof, he is authorized to procure another judge to sit for him.

(2) In the event that he is so situated as to render it improper, in his opinion, for him to preside at a trial, then he shall enter that fact of record, in which event the clerk shall certify the statement of the judge to the Governor, who shall designate another judge to preside.

(3) If the regular judge, by reason of sickness or other physical disability, is unable to hold his court, then the Governor shall be notified, either by the judge himself, his attending physician, the attorney for the Commonwealth, or the clerk of any such court, and the Governor shall then designate some other judge to hold court.

■ The statute clearly provides that only in the event of one such contingency is it necessary for the regular judge to enter anything on the record, *i. e.*, when, in his opinion, he is disqualified.

The history of this section clearly indicates that this is the correct construction to be placed on it. By section 3065 of the Code of 1887 the judges of the circuit courts were expressly permitted to exchange with each other their respective circuits for a period not longer than one year, but in this event it was necessary that a formal order setting forth such agreement be recorded. Without formal exchange, one circuit judge was permitted to hold court for another for either a full term or for a part thereof.

In Munford's Code (1873), chapter 154, section 14, is found the following provision applicable to county judges:

"If any judge of a county court be unable or fail to attend a regular term of his court, or be prevented from sitting during the whole term, or if, from death or other cause there be no judge of such county, any other county judge may hold said court, either for the whole term or any part thereof.

The constitutionality of this provision was upheld in the case of *Smith* v. *Commonwealth*, 75 Va. 904, where it was stated: "It was necessary for public convenience and in the administration of public justice that the judge of one county might take the place of another judge, and that the *court* should be the same." In that case it appears that the judge of Patrick county was sitting in Henry county at the request of the local judge.

By an amendment found in the Acts of 1883–1884, chapter 566, page 748 (section 3049, Code of 1887), this provision was made to read as follows:

"If a judge of a  *  *  *  court be unable or fail to attend a regular term of his court, or be prevented from sitting during the whole term, or any part thereof, or if he

be so situated as to render it improper in his judgment for him to decide any cause or preside at the trial thereof, and *it be so entered of record,* or if, from death or any other cause, there be no judge of such county or corporation court, the judge of any other county court may hold said county court and the judge of any other corporation court may hold said corporation court, either for the whole term or any part thereof." (Italics suppled.)

In the case at bar the accused relies upon the case of *Gresham* v. *Ewell,* 85 Va. 1, 6 S. E. 700, in which case there were only three judges sitting. In the majority opinion it was held that the 1884 amendment, "it be so entered of record," applied both to the situation when the judge was unable to attend his term of court and when he was so situated as to render it improper for him to decide the cause. Judge Lewis, in his dissenting opinion, stated that an entry of record was required only in the event that the judge was not qualified to try the cause, and that it did not apply when the judge was absent or unable to attend the court.

The General Assembly of 1902–03–04, Extra Session, amended this section several times, but by an act found on page 666 of the Acts of that session the legislature seems to have incorporated into the statute the minority view of Judge Lewis in the above case which is substantially section 5898 of the 1919 Code.

This section was discussed in the case of *Smith* v. *White,* 107 Va. 616, 59 S. E. 480. The facts in that case were that Judge White, the regular judge of the Circuit Court of Albemarle county, was interested in a matter and filed a bill in chancery requesting the construction of a certain clause in a will. Judge Christian, of the Corporation Court of the city of Lynchburg, presided. It did not affirmatively appear that there had been any entry of record by the clerk of the fact that it was improper for Judge White to

preside, nor did it appear that Judge Christian had been designated by the Governor. It was held that unless the objection was properly made in the lower court it could not be raised for the first time in this court. The court stated that the entry which the statute required was not an order or decree in the case, but was a mere statement of fact to be entered of record, and that in the absence of affirmative proof that it was not done it will be presumed that the presiding judge acted under proper authority.

· ██ ██ Judge Crump, sitting as the president of the special court in the case of *Bukva* v. *Matthews*, 149 Va. 500, 140 S. E. 674, 677, stated that "section 5898 of the Code allows any trial judge in Virginia to preside over the court of any other judge in the State upon the mere request or procurement of the latter, without any designation by the Governor."

The above construction is in accord with the view long held by both the bench and the bar of this State. It is the practice in different parts of the State for a judge to procure another to preside for him without requesting the Governor to designate such judge, or entering any order therefor. The statute requires no order in any event. A · mere statement of fact is required to be entered when the resident judge is disqualified, and that fact certified to the Governor.

The reasons for the requirement of this entry are two-fold: (1) To enable a judge who may have a personal interest in the outcome of the litigation to free himself from possible embarrassment by simply making a statement of record, and in so doing end his official connection with the matter. (2) It removes all possible grounds of suspicion that the interested judge is using his office to obtain a judge to preside who might be biased in his favor. The reason for the requirement is, therefore, applicable only in the event that the resident judge is of opinion that he is disqualified to preside.

■ There is no merit in this contention, and in any event, the objection after one continuance, bail and an adverse verdict came too late.

The accused moved the court to set aside the verdict on the ground that there was no corroborative evidence of the promise of marriage. In disposing of this assignment of error, we shall only refer to that part of the evidence deemed necessary to a clear understanding of the law applicable.

It appears from the evidence of the Commonwealth that the home of Mary Nicholson, the prosecutrix, was at Ferrum, in Franklin county; that in 1927 she went to a business school in Roanoke, and later was employed at a silk mill in that city. She claims to have become acquainted with the accused on January 12, 1929, and from that time until after the child was born, on August 19, 1929, the accused visited her regularly, as stated in his own language: "I won't say every night, but most every night." He visited her at her home at Ferrum and, after her condition became apparent, referred to her as his wife. On August 13th there appeared a newspaper announcement that the parties were married in Bristol on January 12, 1929. No denial of this statement was made by the accused until several weeks after the child was born. During the interval between this time and the date of the birth of the child the accused visited the prosecutrix in her father's home and was received by him as a member of the family. It seems, however, that the prosecutrix and the accused mutually agreed so to act in order to deceive her father. The accused spent the night before the child was born at the home of the prosecutrix and next morning went for the doctor and the nurse to attend the birth of the child.

Judge Keith, in the *Mills Case*, 93 Va. 815, 22 S. E. 863, said that corroboratory evidence "must be evidence which does not emanate from the mouth of the seduced

female; that it must not rest wholly upon her credibility, but must be such evidence as adds to, strengthens, confirms and corroborates her."

This case comes squarely within the rule laid down in the case of *Riddleberger* v. *Commonwealth*, 124 Va. 783, 97 S. E. 310, 311, where it is said.

■ "To sustain such a conviction it is well settled that the corroborating evidence need not be direct but may be circumstantial, or partly direct and partly circumstantial evidence. Touching the promise of marriage, it is also well settled that the supporting evidence need be such only as the character of that matter admits of being furnished. As said in the case of *Lasater* v. *State*, 77 Ark. 468, 94 S. W. 59: 'The promise of marriage is not an agreement usually made in the presence or with the knowledge of third persons. Hence, the supporting evidence possible in most cases is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage.'" See *Shaver* v. *Commonwealth*, 151 Va. 545, 145 S. E. 377.

■ It is claimed by the accused that a letter from the prosecutrix to him, dated May 23, 1929, after her condition was known to both of them, conclusively shows that there was no promise of marriage. While the letter tends to support this contention, it is not conclusive, and it was for the jury to consider it along with all the other evidence in the case and give it such weight as in their judgment seemed proper.

■ There is no error in the action of the court in overruling the motion for a new trial on this ground.

The third assignment of error is to the action of the court in overruling the motion for a new trial on the ground of after-discovered evidence.

A discussion of the principles of law applicable to this point is found in the following cases: *St. John's Exors.* v.

*Alderson,* 32 Gratt (73 Va.) 140; *Johnson's Case,* 104 Va. 881, 52 S. E. 625; *Johnson* v. *Commonwealth,* 126 Va. 770, 101 S. E. 341; *Powell* v. *Commonwealth,* 133 Va. 741, 112 S. E. 657, 33 A. L. R. 541; *Hodnett* v. *Danville,* 152 Va. 955, 146 S. E. 281; and *Mason* v. *Commonwealth,* 154 Va. 890, 153 S. E. 684.

The learned Attorney-General contends that the trial court was correct in overruling this motion, and bases his contention on two grounds: (1) That the new evidence is merely cumulative; (2) that he does not believe it would change the result.

We cannot agree with either of these contentions. Whether Mary Nicholson was a woman "of previous chaste character" is the question raised by the after-discovered evidence. In the trial, the accused introduced testimony showing numerous circumstances and acts from which the jury might readily have inferred that she was not a chaste woman, *e. g.,* she and her female companions would allow men, strangers to them, to accost them on the streets and other public places in Roanoke, and go automobile riding with them at night; that they frequented such places referred to in the evidence as "nature's own;" she allowed a young man to take her bloomers off while sitting at night in a parked car; and was frequently seen with men in private rooms at different hotels.

The only direct testimony showing want of previous chastity was that given by one of Mary Nicholson's female companions, who said that before the accused became acquainted with the prosecutrix she saw her in a private room at a certain hotel undress and have intercourse with a man in the same bed on which the witness was lying. This latter testimony was so unusual and so nauseating that the jury might well have taken the view that they did and disregarded the whole of it. Except for this unusual incident, the accused relied solely on inferences to prove want of chastity.

The new evidence relied upon is contained in two affidavits, one of Columbus Agabright and the other of L. E. Hippert, Jr., The statements of Columbus Agabright show that in the fall of 1927, and frequently thereafter, he had sexual intercourse with Mary Nicholson; that Mary Nicholson admitted to him that she had had intercourse with two other boys, giving their names and the places at which the intercourse took place. The affidavit of L. E. Hippert, Jr., is as follows:

"That during the early part of November, 1928 (as affiant verily believes, but which date can be definitely fixed by him later when he has access to certain papers which he owns) the said affiant was in the filling station of Jess Ingram, at Ferrum, Franklin county, and there in the back room of said filling station became acquainted with a girl whom he later learned was Mary Nicholson. That at the time she was in company with several others, and although drinking was perfectly sober and normal. That affiant proposed to the said Mary Nicholson that they take an automobile ride, to which she agreed. That at this time he had not been introduced to her and did not know her name. That this occurred after dark and they went for a ride in the direction of Rocky Mount. That on the road, while riding along, affiant asked said Mary Nicholson 'how it would be for them to have a little party,' to which she agreed and he told her he was a stranger to that road and asked if she knew where a suitable place could be found. That in pursuance to this request she directed him to a private, narrow cross road, to which he drove and then and there had sexual intercourse with her. That she further told him that she had been at this same place and had had sexual intercourse with J. O. Shively in this private cross road. * * *

"That this statement is made without any reward or hope of reward being paid to said affiant, but purely as a

means of preventing what he believes to be an injustice in the conviction of Lewis Akers for her seduction."

The new evidence is positive and definite as to time, place and the circumstances under which each of the affiants had intercourse with the prosecutrix prior to the time that she met the accused. They go further and show that Mary Nicholson made no effort to conceal the fact, if it be a fact, that she was a lewd woman.

The record shows that the accused had produced evidence discovered since the trial, and that he used due diligence to ascertain the same before trial. The new evidence, if believed by the jury, would change the result, whether or not it is merely cumulative is a secondary consideration.

From the cases cited above, it will be seen that this court has long recognized this principle, but has applied it with caution and only to prevent a miscarriage of justice. The real object to be attained in granting a new trial is to prevent an erroneous judgment from becoming final. See *Spencer* v. *State*, 69 Tex. Cr. R. 92, 153 S. W. 858, 46 L. R. A. (N. S.) 903 and note; *Vickers* v. *Carey Co.*, 49 Okl. 231, 151 Pac. 1023, L. R. A. 1916C, 1155 and note; *Dougherty* v. *State*, 7 Ga. App. 91, 66 S. E. 276; *Fenner* v. *Commonwealth*, 152 Va. 1014, 148 S. E. 821.

We do not undertake to say that the new evidence is true or what weight a jury should, or would, give to it. In our opinion, it ought to change the result if it is worthy of belief, but whether it is worthy of belief is a question which should be determined by a jury and not by the court.

In the discussion of the evidence, old and new, there has been no intention of expressing an opinion as to the actual guilt or innocence of the accused, or as to the weight or credibility of the testimony, and nothing said herein must

be so construed by the trial court or so used before the jury on another trial.

There are other assignments of error dealing with the admission and rejection of evidence, but as these questions are not likely to arise on a new trial it is deemed useless to prolong this opinion by discussing them.

The judgment will be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*