Opinion.

---

# Richmond.

## WILSON'S EXECUTOR v. KECKLEY.

November 21, 1907.

Absent, Keith, P., and Cardwell, J.

1. NEW TRIAL—*After-Discovered Evidence—Counter Affidavits.*—On the hearing of a motion to set aside a verdict for after-discovered evidence, counter affidavits may be received. To warrant a new trial for after-discovered evidence, the evidence must be such as ought, on another trial, to produce an opposite result on the merits, and not merely for the purpose of impeaching or discrediting a witness on the opposite side.

Error to a judgment by the Circuit Court of Rockingham county in a proceeding by motion for a judgment. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Ed. C. Martz* and *D. O. Dechert,* for the plaintiff in error.

*Conrad & Conrad,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The first question raised on this writ of error is whether or not, upon the motion to set aside the verdict on the ground of newly-discovered evidence, it was error in the court in passing upon that motion to consider counter affidavits.

It was settled in *Nicholas' case,* 91 Va. 741, 752, 21 S. E.

364, that such affidavits may be considered by the court in determining whether or not a new trial should be granted on that ground.

The motion to set aside the verdict and award a new trial because of the newly discovered evidence was overruled, and this action of the court is also assigned as error.

The only issue in the case was whether or not the bond upon which the motion for judgment was based had been paid. Upon the trial the defendant introduced, among others, two witnesses, Clatterbuck and Landes, who testified that they were present when the bond in suit, or one of like amount, was paid, narrated the circumstances under which the payment was made, and said that they were called upon by Captain Wilson, the obligee in the bond sued on, to witness the fact that it had been paid, as the "note" was at the obligee's shop and not at his house, where the payment was made, and that he was dressing and in a hurry to go to the springs and did not have time to get it, but would mark it satisfied and surrender it to the defendant. The plaintiff, in opposition to this, testified that, in several conversations he had with defendant in reference to the bond, he claimed to have paid the note to the obligee in his barnyard while he was getting his horse and buggy to go to Sparkling Springs; that as he understood the defendant, he did not claim that anyone else was present at that time; and that the only person by whom he could prove the payment was a Mr. Leake, who took his place in the tannery, where he was employed while he went out at the dinner hour to make the payment.

The newly discovered evidence upon which the plaintiff relies tends to prove, in the language of his petition for the writ of error,

"1. That on the 9th day of August, 1901, when Wilson went to Sparkling Springs, and the only date upon which the payment claimed could have occurred at all with any of the attendant circumstances narrated by defendant's witnesses, Keckley

(the defendant) was not at work at the tannery. * * * This disposes at once of Clatterbuck, who claims to have been obliged to wait to see Keckley until he should have stopped work for the noon hour, and to have actually joined him on his way from work at the tannery; and of Landes, who as claimed by him and Clatterbuck came from the tannery with Keckley.

"2. That at the time when it. is claimed by these witnesses the payment was made, Wilson was at the home of Miss Points—not at his own house—and the payment could not, therefore, have been made.

"3. That Wilson did not change his costume before leaving town, and, therefore, the testimony of Clatterbuck and Landes that he was dressing to go to the Springs when the alleged payment was made, could not be true. * * *

"4. That at the time of said alleged payment the witness, Clatterbuck, was not in the town of Harrisonburg at all * * *"

The object of the newly-discovered evidence was manifestly to discredit the witnesses Clatterbuck and Landes, who had testified at the trial that they were present when the debt sued for was paid. None of the newly discovered witnesses knew anything about the fact in issue; their statements were as to other facts, which, if true, tended to show that Clatterbuck and Landes had testified falsely, as it was impossible for them to have been witnesses to the payment of the debt at the time and under the circumstances disclosed by their evidence. The object of this newly discovered evidence was not only to discredit Clatterbuck and Landes, but it is not at all clear, that, upon a new trial it ought to produce a different result, especially in the light of the counter affidavits—indeed, it could not do so unless the jury believed that those witnesses were wilfully swearing falsely.

With respect to granting new trials on the ground of after-discovered evidence, there are certain principles of law which must be considered as settled. Among these are, that the evi-

dence must be such as ought, on another trial, to produce an opposite result on the merits, and that it must not be merely for the purpose of impeaching or discrediting a witness on the opposite side. *Thompson* v. *Com'th,* 8 Gratt. 637, 641; *St. John's Ex.* v. *Alderson,* 32 Gratt. 140; *Wynne* v. *Newman's Admr.,* 75 Va. 811; *Nicholas' Case,* 91 Va. 741, 21 S. E. 364.

Applying these principles to the motion for the new trial, we are of opinion that the circuit court did not err in overruling the same; and that the judgment complained of should be affirmed.

*Affirmed.*