# Richmond.

## Raymond Holmes v. Commonwealth.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Browning, JJ.

The opinion states the case.

*H. M. Smith, Jr.,* and *George H. Paul,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The only question raised in this case is, in considering

a motion to set aside a verdict on the ground of after-discovered evidence, may a trial judge receive counter affidavits disputing the alleged facts, weigh the contradictory statements, and make his decision accordingly?

The facts as certified to us in the record are substantially as follows: C. W. Williams, while collecting premiums for an industrial insurance company on the night of November 16, 1929, in that part of South Richmond called "Tanyard Bottom," was robbed of $80.00. Williams claims that Raymond Holmes, the accused, struck him from behind, knocked him down and took his money; that while being robbed he had a good look at the face of his assailant, and on the same night, shortly after the robbery, when the accused was brought to the police station under arrest, he recognized him. Just before the robbery, the accused was seen by another witness following Williams down the street. Others saw him on the same night shooting crap near the scene of the crime, but whether before or after the robbery does not appear.

The certificate of facts further shows that at the time he was robbed Williams was drunk, and that one Cross 'phoned the police to come after him; that the robbery occurred in a field across the street from the home of Dick Milford. These facts do not appear to have been disputed at the time of the trial.

The jury returned a verdict of guilty, and the accused made a motion to set aside the verdict on the ground of after-discovered evidence. The after-discovered evidence consists of an affidavit made by a colored undertaker named Cunningham to the effect that the affiant had seen Williams go to the home of Milford drunk; that he had fallen off of Milford's porch, and that Cunningham had seen three men, i. e., Price, Jenkins and Tucker, take Williams out of Milford's yard into a field.

Cunningham made a second affidavit in which he stated that not only had he seen the three men take Williams into this field, but he had seen one of them take money from Williams' pocket and divide it between himself and his two companions.

Price likewise made two affidavits. In the first he stated

that he, Jenkins and Tucker had taken Williams up from near Dick Milford's porch and carried him across the street. His second affidavit denies the statement contained in the first, and says the reason he made the first affidavit was because Cunningham requested him to make the statement, and Lee Holmes, the father of the accused, at the same time offered to give him $50.00 if Raymond Holmes was released.

There are other counter affidavits made by Jenkins, Tucker and Dick Milford, all denying substantially the statements made by Cunningham. Milford's affidavit stated that Cunningham, Price and Tucker came to his house the night of the robbery and that none of them said anything about Williams having been robbed or having found him drunk and carried him into a field, and that he heard nothing about this until February 21st, when Cunningham came to his home and asked him if it would be any harm "for me to get Fred Price and Ernest Jenkins to state that they helped me pick Mr. Williams up off the front porch and take him out in the field?"

Jenkins and Tucker both denied the statements contained in Cunningham's affidavit, Jenkins saying that he had been offered pay if he would make such an affidavit as Cunningham made.

From the counter affidavits, it appears that Cunningham was a friend to the parents of Raymond Holmes and that it was generally known among the colored people in South Richmond that Raymond Holmes had been arrested and would be tried for the robbery of Williams.

The attorney for the Commonwealth, in addition to securing the counter affidavits, investigated the matter, and Cunningham was indicted for perjury and subornation of perjury in connection therewith.

The accused contends that the issue here presented is one of fact; that Cunningham's affidavit and the first one of Price are sufficient, if true, to change the result on a new trial, and that the trial judge, in considering the second affidavit of

Price and the other counter affidavits mentioned above, undertook to pass upon the credibility of the conflicting statements made. In other words, the accused takes the position that all a losing party has to do is to produce and file affidavits of newly discovered evidence which are sufficient in substance to cause, or are likely to cause, a different verdict upon a second trial, and that the only province of counter affidavits is to show whether or not the evidence set forth as after-discovered, by the use of reasonable diligence, could have been discovered at the time of the first trial. With this contention we cannot agree.

The accused relies mainly upon the statements of this court in the case of *Hines* v. *Commonwealth*, 136 Va. 734, 117 S. E. 843, 849, 35 A. L. R. 431, where it is said: "We do not undertake to say what weight a jury would give to the new evidence, but it certainly ought to change the result if it is worthy of belief, and whether it is worthy of belief is a question which ought to be settled, not by the court, but by a jury."

In that case Hines was convicted of murder on circumstantial evidence. The after-discovered evidence tended to show that a cap found at, or near, the scene of the crime belonged to another party who had a similar gun, a similar motive, and a similar opportunity to commit the crime, and who, in addition, admitted to several persons that he, and not the accused, was the guilty party.

The language of the court must be considered in the light of the facts of that case. The court held, under the peculiar facts there shown, that the admission by a third party that he had committed the crime was evidence to be considered by the jury, and if believed by them would change the result on a new trial. Considering the circumstances under which they were made, there was nothing in the admissions which was inherently improbable. A careful examination of the entire opinion shows that the court was careful not to state its opinion as to the truth of the newly-discovered evidence. It reached the con-

clusion that the newly-discovered evidence, considered with the evidence introduced at the trial, was likely to produce a different result. The correctness of the newly-discovered evidence was not attacked by counter affidavits, hence the question here raised was not considered by the court in that case.

In the case of *Pauley* v. *Commonwealth*, 151 Va. 510, 144 S. E. 361, 363, the after-discovered evidence relied upon was contained in twenty-four affidavits and an equal number of counter affidavits filed in behalf of the Commonwealth. The court proceeded to analyze the evidence contained in both sets of affidavits, and showed that the new evidence was not entitled to belief, and that in any event the probability was that the result would not have been changed by another trial. As Justice Holt very pertinently said: "Every man is entitled to one fair trial, and no man is entitled to more. It is for these reasons that motions for new trials, because of after-discovered evidence, are not looked upon with favor. If this were not true, then justice, sometimes none too swift, would be more leaden-footed than ever. *Metropolitan Life Ins. Co.* v. *Botto,* 153 Va. 468, 143 S. E. 625 [154 S. E. 603]."

In *Fenner* v. *Commonwealth*, 152 Va. 1015, 148 S. E. 821, 824, Chief Justice Prentis analyzed the statements contained in the affidavits filed in support of a motion for a new trial, on the ground of after-discovered evidence, pointed out their inconsistencies and the improbability of their being true, compared the statements therein with the evidence introduced at the trial, and concluded his discussion on the weight to be given the main affidavit in the following language: "Her testimony would probably have been discredited because of her criminal associations and degrading environment, as well as because of its improbability."

The primary object in considering a motion for a new trial on the ground of after-discovered evidence is to ascertain if an injustice has been done. *Akers* v. *Commonwealth*, 155 Va. 1046, 156 S. E. 763. It has been repeatedly said that if

the new evidence offered comes within the settled rules applicable thereto, one of which rules is that such evidence, if offered on a new trial, very probably would change the result, then the motion should be granted. In determining whether or not it is likely there would be a different verdict, the trial court should receive all the light available within legal limits, and exclude nothing which can legitimately aid in arriving at a correct conclusion. *State* v. *Jones,* 89 S. C. 41, 71 S. E. 291, Ann. Cas. 1912-D, 1298.

■ Counter affidavits showing lack of due diligence on the part of the losing party, or that the alleged new evidence does not in fact exist, or showing the credibility or lack of credibility of the witnesses, or denying, contradicting or explaining the material statements, all tend to aid the court in the exercise of its discretion in granting or refusing to grant a new trial. See 16 C. J. 1234 and cases cited in footnote.

■ The following statement is found in 20 R. C. L. 308: "In view of the temptation to obtain a rehearing after an adverse verdict, particularly in a criminal case, and in view also of the facility with which affidavits for this purpose can be obtained, all such evidence should be scrutinized with the greatest care and caution. It follows, therefore, that where affidavits and other proofs are produced for and against, which are conflicting and contradictory, and of somewhat even balance, so that it requires a precise estimate to determine as to the greater weight or preponderance, the trial court's conclusions will not be disturbed, unless they result in manifest injustice." The cases cited support the text.

In the *Nicholas Case,* 91 Va. 741, 21 S. E. 364, 367, it is said: "The application for a new trial is addressed to the sound discretion of the court, and based upon the ground that there has not been a fair trial upon the merits. I can see no good reason why counter affidavits cannot be filed for the purpose of showing that the alleged ground for a new trial has no existence. Counter affidavits may properly be received

in opposition to a motion for a new trial on the ground of newly discovered evidence."

In *Wilson* v. *Keckley,* 107 Va. 592, 59 S. E. 383, it is said: "It was settled in *Nicholas' Case,* 91 Va. 741, 752, 21 S. E. 364, that such affidavits may be considered by the court in determining whether or not a new trial should be granted on that ground."

In the case at bar the accused relies solely upon the statements of Cunningham, who claims to have seen the three men commit the crime charged against the accused; he saw the officers arrive and did not inform them that Williams had been robbed; he does not deny that he knew Raymond Holmes and Lee Holmes, his father, yet he remained silent from November 16th until the February following, and offers no explanation of his silence. Just a few days after the conviction of Raymond Holmes, he went with Lee Holmes to a number of people in an effort to obtain new evidence. In his first affidavit he fails to disclose to the court what he now claims to be a fact, *i. e.,* that he saw the actual robbery committed.

The counter affidavits deny every material statement made by Cunningham, and, in addition, state that he is a "good friend" of the family of the accused, and charge him with aiding in the use of illegal means to obtain evidence.

The following expression from Judge Buchanan in the case of *Wilson* v. *Keckley, supra,* aptly expresses our conclusion in the case under consideration: "It is not at all clear that, upon a new trial, it (the new evidence) ought to produce a different result, especially in the light of the counter affidavits."

For the reasons assigned, we are of opinion that the trial court did not abuse its discretion in overruling the motion for a new trial, and the judgment complained of is affirmed.

*Affirmed.*