## Richmond

LEE GARY WHITTINGTON

v.

COMMONWEALTH OF VIRGINIA

No. 0217-85

Decided October 20, 1987

COUNSEL

Paul C. Bland, for appellant.

Thomas C. Daniel, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.** — In this appeal of a rape conviction Whittington argues that the trial court erred in denying his motion for a new trial based upon after-discovered evidence. We agree, concluding that the trial court abused its discretion in denying Whittington's motion for a new trial. Accordingly, we vacate the judgment, and

remand the proceeding to the trial court for a new trial.

The victim, a twenty-one year old Army private stationed at Fort Lee, Virginia, testified that she went to a recruiting station in Petersburg, along with a male friend, in search of the U.S.O. Whittington, an army recruiter in Petersburg, after talking with the two, took her for a ride on his motorcycle. He drove her into the Prince George County countryside, stopped along the way to buy wine, and eventually stopped alongside a wooded area "to let his bike cool off."

The victim testified that Whittington talked to her about having sexual relations but she resisted him. However, she stated that he eventually had sexual intercourse with her by force and against her will. Whittington took her back to the recruiting station where her friend was waiting, and the two returned to Fort Lee by taxi. Two days after the incident, another sergeant spoke to her about a mark he observed on her neck. She cried, went to his office, and told him what happened. Whittington was charged with rape and convicted.

Approximately ten days after Whittington's conviction, Sergeant Kathleen M. Davis, who was also stationed at Fort Lee, stated in an affidavit that she had several conversations with the victim prior to the trial during which the victim told her that she was not raped by Sergeant Whittington. Later, at a hearing on the motion for a new trial, Davis testified: "She said that he pulled her jeans, her pants and that she began to cry and say please take me back. Then she got upset, but they had moved to the ground. And that she became so upset and crying that he left her alone."

Davis did nothing for more than a week after she read about the trial in the newspaper. At that point she received a call from the post sergeant major who had obtained her name from an individual with whom she had discussed the case at a laundromat. When the sergeant major telephoned her about the case, Whittington was with him and talked to her on the phone. Whittington met her the next day, and she went to his lawyer's office, although she never informed the police.

The trial court denied Whittington's motion for a new trial. The court did not dispute that the evidence was discovered after trial

and that it was not cumulative. The court concluded, however, that Whittington had not shown that the evidence could not have been discovered prior to trial through the exercise of reasonable diligence and had not shown that the newly discovered evidence would have produced a different result at another trial.

■ The trial court correctly identified the four requirements, imposed by the need for finality, that must be met before the granting of a new trial based upon an allegation of newly discovered evidence: (1) the evidence was obtained after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) it is material and should produce an opposite result at another trial. *Odum v. Commonwealth*, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).

■ The opportunity and temptation for fraud which accompany a motion for a new trial require that such a motion be approached guardedly. *Lewis v. Commonwealth*, 193 Va. 612, 625, 70 S.E.2d 293, 301, *cert. denied*, 344 U.S. 880 (1952). Therefore, such a motion is received cautiously, is awarded with great reluctance, and is addressed to the sound discretion of the trial court. *Odum*, 225 Va. at 130, 301 S.E.2d at 149.

Viewing Whittington's motion for a new trial in that light, we conclude that it should have been granted. The evidence could not have been discovered prior to trial even through the exercise of reasonable diligence and could, if believed, have produced a different result at another trial.

Even with the exercise of reasonable diligence, an investigation could not have been expected to uncover Davis's testimony prior to trial. Although Davis was stationed on the same Army base as the victim, she was not regularly assigned to the same company. She only happened to be assigned as "charge of quarters" on two or three nights during the month when she spoke with the victim. Davis only discussed the victim's statements with her husband and, after trial, with an acquaintance at a laundromat. Discovery of the victim's statements to Davis could not have been accomplished without either unusual good fortune or an extensive investigation involving interviews with all of the military personnel assigned to the Army base.

Even if the newly-discovered evidence could not have been discovered prior to trial, it must also be such as should produce an opposite result at a new trial. In considering the effect of the newly-discovered evidence on the result of a new trial, the nature of the new evidence must be weighed in light of the evidence presented at the first trial. If the newly-discovered evidence does not go to the merits of the case but merely impeaches a witness who testified at the earlier trial, generally a new trial will not be granted. *Powell v. Commonwealth*, 133 Va. 741, 750-51, 112 S.E. 657, 660 (1922). Therefore, if newly-discovered evidence merely reveals either the witness's bad character, the witness's inconsistent statements or facts inconsistent with the witness's testimony, a new trial generally will not be awarded. *Id.* at 751, 112 S.E. at 660.

The general rule, however, does not require rejection of a motion for a new trial simply because the object of the newly-discovered evidence is to impeach a witness. *State v. Stewart*, 161 W. Va. 127, 136, 239 S.E.2d 777, 783 (1977). If the witness sought to be impeached is "the key prosecution witness," then a new trial should be ordered, assuming all of the other requirements for a new trial are met. *Id.* at 138-39, 239 S.E.2d at 784; *see also Ingram v. Peyton*, 367 F.2d 933, 936-37 (4th Cir. 1966).

In *Powell*, newly discovered evidence which impeached a key prosecution witness justified ordering a new trial. Testimony of an eye witness to a murder was impeached by evidence that the day after the trial the witness described the homicide differently than she had described it at trial, indicating that the accused had acted in self-defense. 133 Va. at 758, 112 S.E. at 662. Although another witness also described the homicide at trial, the Supreme Court concluded that he may have done so because of his relationship with the witness whose testimony was impeached and, therefore, ordered a new trial. *Id.* at 757, 112 S.E. at 662.

In this case Whittington's conviction rested solely on the victim's testimony. She said he raped her, but she did not report it for two days. No medical or physical evidence corroborated her claim. If the jury had not believed her testimony, Whittington would have been acquitted.

Whether the victim's testimony is to be believed, in light of the newly-discovered evidence, is a question to be resolved by a jury

and not by the court.[1] *Hines v. Commonwealth*, 136 Va. 728, 751, 117 S.E. 843, 849-50 (1923). The trial court must determine whether, after eliminating disputed testimony, there remains sufficient evidence to sustain the verdict. *Fout v. Commonwealth*, 199 Va. 184, 192, 98 S.E.2d 817, 823 (1957). If the evidence is sufficient to sustain the verdict, a new trial should not be ordered. If the evidence is not sufficient, a new trial should be ordered, and the fact finder must determine whether the disputed testimony is worthy of belief. *Hines*, 136 Va. at 750-51, 117 S.E. at 849.

Although language in *Lewis v. Commonwealth*, 193 Va. at 625, 70 S.E.2d at 301, suggests that the trial court should also determine whether a witness testified falsely at trial, the opinion, when read as a whole, does not support that interpretation. The opinion states that it is the trial court's "prime duty of determining whether [a witness] swore falsely at the trial." *Id.* However, the Court was speaking of a witness who testified at trial, later recanted his testimony before a notary and then, even later, when testifying at a hearing on a motion for a new trial, repudiated the recantation and reaffirmed his trial testimony. *Id.* at 626, 70 S.E.2d at 302. The opinion further points out that the verdict did not rest upon the uncorroborated testimony of the witness and that even if the witness's testimony was disregarded the jury could have found no other verdict. *Id.* The Court did not overrule *Powell v. Commonwealth*, 133 Va. 741, 112 S.E. 657 (1922), but reaffirmed its principles and distinguished its holding. Therefore, we do not interpret *Lewis* to require the trial court to resolve the credibility of a witness whose disputed testimony is essential to sustain the verdict.

In summary, we conclude that Davis's testimony could not have been discovered previously through the exercise of reasonable diligence, and, since her testimony impeached that of the victim whose testimony was essential to support the verdict, the newly-discovered evidence, if believed, could result in a different verdict. Therefore, the judgment of conviction is reversed and the matter

---

[1] Davis's credibility may be considered in resolving this question. In her affidavit Davis reported that the victim said Whittington "never pulled her pants off." Whether this conflicts with her testimony at the hearing on the motion for a new trial is to be resolved by the fact finder. However, contradictory results of two polygraph examinations are inadmissible on this issue. *See Robinson v. Commonwealth*, 231 Va. 142, 156, 341 S.E.2d 159, 167 (1986).

is remanded for a new trial.

*Reversed and remanded.*[2]

Duff, J., concurred.

Moon, J., dissenting.

I concur with the majority insofar as it finds that the "newly-discovered" evidence could not have been discovered for use at the trial. However, I would affirm the conviction because I do not believe that upon this record we should find that the trial judge should have been convinced that the complaining witness lied or abused his discretion in not granting a new trial.

In deciding whether the evidence might have produced a different result at a new trial, the trial judge weighed the testimony of Sergeant Davis in light of the testimony he heard at the trial. He observed the victim and Private Stodgel give their testimony and was in a position to weigh their appearance and credibility in comparison with that of Sergeant Davis who testified at a post trial hearing. Furthermore, if a new trial is held and Sergeant Davis testifies, the prior reports by the victim would be admissible as prior consistent statements to negate the impeaching effect of Sergeant Davis' testimony. *See Moore v. Commonwealth*, 222 Va. 72, 78-79, 278 S.E.2d 822, 826 (1981).

Approximately ten days after Whittington's conviction, Sergeant Kathleen M. Davis stated in an affidavit that she had several conversations with the victim between July 4, 1984, and November 19, 1984. She claimed that the victim came to her duty station and told her that she was not raped by Sergeant Whittington. The critical part of her affidavit states:

> That while on duty, I had several conversations with . . . [the victim], between July 4, 1984 and November 19, 1984. On the 20th day of October, 1984, on a Saturday night . . . [the victim] came to my duty station and told me that she was not raped by Sergeant Whittington. We often talked about this matter because I, was a former victim of an at-

---

[2] Another issue raised by Whittington on this appeal has no precendential or public value, and, therefore, was considered and disposed of in an unpublished memorandum opinion filed with the clerk of this court from whom it is available upon request.

tempted rape. She told me that Sergeant Whittington never pulled her pants down. She told me this on several occasions.

The reason I did not come forward before now is that I did not know that there was actually a rape charge. When I read the newspaper, I discovered that a man had been convicted of rape and had received 10 years. My conscious [sic] bothered me because I knew from the many conversations with . . . [the victim] that Sergeant Whittington never pulled her pants off. This is why I have now come forward.

At an *ore tenus* hearing concerning the motion for a new trial, Davis contradicted this statement in some respects. Davis testified at the hearing: "She said that he pulled her jeans, her pants and that she began to cry and say please take me back. Then she got upset, but they had moved to the ground. And that she became so upset and crying that he left her alone." Davis also testified that she did not do anything for more than a week after she read the story in the newspaper.

Davis explained that she received a call from the post sergeant major who obtained her name from an individual whom she had met at the laundromat who had seen a notice in the newspaper about this case. When the sergeant major telephoned her about the case, Sergeant Whittington was present with him and talked to her on the phone and met her the next day. She then went to Whittington's lawyer's office and never informed the police. She could not recall how many times she talked to Sergeant Whittington before the hearing.

Both the Commonwealth's attorney and defense counsel stipulated that Sergeant Davis should be given a polygraph examination and that the results would be admissible at a hearing for a new trial. The polygraph examiner testified that Sergeant Davis was deceptive regarding her testimony. In *Robinson v. Commonwealth*, 231 Va. 142, 341 S.E.2d 159 (1986), the Supreme Court strongly denounced the use of polygraph results in criminal trials. However, because the defendant failed either to object at trial or to raise the point on appeal, we should not use the trial judge's conclusion to admit the results as a means of supporting the decision to reverse. Rule 5A:18. In addition, the result of Davis' polygraph examination was not offered into evidence at a trial to de-

termine the guilt or innocence of Whittington, as was attempted in *Robinson*; thus there was no danger of removing from the jury one of its essential functions. Instead, we are considering its introduction before a judge at a hearing to determine whether a new trial was warranted, a setting where evidence is generally looked upon with special caution and careful scrutiny, as discussed in the majority opinion.

The Supreme Court of Virginia has consistently stated that motions for a new trial based upon after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor because of the obvious temptation that arises for fabrication of such evidence, must be considered with special care and caution, and should be granted only with great reluctance. *Odum v. Commonwealth*, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983); *Lewis v. Commonwealth*, 209 Va. 602, 608, 166 S.E.2d 248, 253 (1969).

The Supreme Court stated in *Holmes v. Commonwealth*, 156 Va. 963, 157 S.E. 554 (1931):

The primary object in considering a motion for a new trial on the ground of after-discovered evidence is to ascertain if an injustice has been done.

*Id.* at 968, 157 S.E. at 556 (citations omitted).

The Supreme Court further stated:

In view of the temptation to obtain a rehearing after an adverse verdict, particularly in a criminal case, and in view also of the facility with which affidavits for this purpose can be obtained, all such evidence should be scrutinized with the greatest care and caution. It follows, therefore, that where affidavits and other proofs are produced for and against, which are conflicting and contradictory, and of somewhat even balance, so that it requires a precise estimate to determine as to the greater weight or preponderance, the trial court's conclusions will not be disturbed, unless they result in manifest injustice.

*Id.* at 969, 157 S.E. at 556.

Furthermore, in the line of cases starting with *Powell v. Commonwealth*, 133 Va. 741, 112 S.E. 657 (1922), the Supreme Court, dealing with allegations of perjury at trial by the principle witness, has stated that the trial court should be *convinced* that evidence exists that the witness perjured himself at trial before a new trial should be granted. *Id.* at 756, 112 S.E. at 661. The principle in *Powell* was reaffirmed in *Fout v. Commonwealth*, 199 Va. 184, 192, 98 S.E.2d 817, 823 (1957).

> Deducible from the authorities are these principles: There must be *clear and convincing proof that the witness testified falsely at the trial*, and not merely proof that by reason of conflicting statements his testimony is unworthy of belief. Application for a new trial is addressed to the sound discretion of the trial court which has the opportunity of seeing and hearing the witness whose testimony is brought under attack, and the prime duty of determining whether he swore falsely at the trial.

*Fout*, 199 Va. at 192, 98 S.E.2d at 823 (emphasis added).

Based upon the evidence in the trial, the circumstances of Sergeant Davis coming forward, and the opportunity of the trial judge to assess the credibility of the witnesses, I cannot conclude that there was, as a matter of law, clear and convincing proof that the victim perjured herself at trial. Therefore, I cannot find that it was an abuse of discretion for the trial court to rule that a new trial should not be granted. I respectfully dissent.