COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


MUSTAFAA JOHNSON
                                              OPINION BY
v.    Record No. 0335-02-2         JUDGE SAM W. COLEMAN III
                                            JUNE 10, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                  Pamela S. Baskervill, Judge

          Elliott B. Bender for appellant.

          Virginia B. Theisen, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     The trial court convicted Mustafaa Johnson in a bench trial

of distributing cocaine in violation of Code § 18.2-248.  On

appeal, Johnson contends the trial court abused its discretion by

failing to grant him a hearing or new trial based on newly

discovered evidence.  He also asserts that the Commonwealth

violated his constitutional right to obtain exculpatory evidence

by not providing him with information concerning a witness'

criminal charges and convictions.  Finding no error, we affirm.

                        BACKGROUND

     Linda Jones, a paid informant working with a drug task

force, testified that on November 28, 1997, Investigator Vaughan

gave her money to make a controlled purchase of cocaine.  Jones

stated that after receiving the money she returned to her motel

room where she arranged to and did purchase cocaine from Mustafaa Johnson at about 6:00 p.m. that evening. Jones had known Johnson for about three weeks prior to the purchase.

On direct examination, Jones testified that she had been convicted of four felonies involving food stamp fraud and of feloniously taking a minor across state lines. Jones denied that she had any other convictions for offenses involving lying, cheating, stealing, shoplifting, or petit larceny.

Jones testified that when she made the buy she was working with the drug task force making controlled drug purchases. She stated that her reason for doing so was that a drug dealer had attempted to sell drugs to her twelve-year-old daughter. She also admitted that she had used drugs. She further stated that the Commonwealth had never dismissed a criminal charge against her as an incentive or reason for her to work with the task force.

Investigator Vaughan testified that before the controlled buy he searched Jones and her vehicle for drugs and found none. After Jones received the purchase money, Vaughan observed Jones return to her motel room. Vaughan testified that at approximately 6:29 p.m. an individual knocked on the motel room door, entered the room, and exited the room. Vaughan stated that after the individual left the motel room, Jones met Vaughan at a pre-arranged location at about 6:45 p.m. and gave him the cocaine that she said she had purchased. Vaughan testified that

-

Jones was paid for making the purchase and for testifying in court.  Vaughan testified that he has worked with Jones on about twenty-five to thirty drug cases, all of which have resulted in convictions.

Johnson made a motion to strike the evidence at the end of the Commonwealth's case.  He argued that Jones' demeanor on the witness stand was evasive and that her testimony was incredible and biased.  Johnson also asserted that the Commonwealth had impeached Jones by proving her prior criminal record of five felony convictions and that her testimony should not be believed.

The trial court overruled the motion to strike Jones' testimony.  The trial court found that Jones had the "appearance of being honest and candid" and that she was a "very credible" witness.

Johnson testified and denied that he sold cocaine to Jones.

At the close of the evidence, Johnson again argued that Jones' testimony was incredible because she was a convicted felon, a former drug user, and because she was paid to testify. The trial court found Johnson guilty of the charged offense, reiterating that it found Jones' testimony to be "unequivocal" and not "incredible in the least."

After Johnson was sentenced, he filed a motion for rehearing or a new trial based on newly discovered evidence. Johnson attached to the motion an affidavit from a private

-

investigator.  The affidavit stated that Jones has used several names and has possibly used several different social security numbers.  The affidavit further stated that Jones had several show cause orders and a capias issued against her at about the same time she was working with the drug task force.

At a hearing held on the motion, Johnson argued that the outstanding show cause orders, which the Commonwealth did not disclose, proved that Jones had or may have had a motivation for working with law enforcement and for testifying in court, which was to avoid going to jail.  Johnson acknowledged, however, that the evidence of the show cause orders "may not [have been] admissible" as impeachment evidence at trial.  Johnson also asserted that Jones had several misdemeanor convictions for assault and battery and being drunk in public.  Additionally, Johnson contended he had newly discovered evidence that an officer from the South Hill Police Department would testify that Jones has a reputation in the community for being dishonest.  Johnson argued that all of this after-discovered evidence would have impeached Jones' trial testimony and would have proved that Jones testified untruthfully.  Johnson requested a hearing in order to "more properly" present this newly discovered evidence.

The trial court ruled that most of the proffered evidence was irrelevant and not admissible at the trial and that the evidence which might have been admissible was not sufficient to meet the requirements for granting a hearing or new trial.

-

ANALYSIS

"Motions for new trials based upon after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance."  Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).  Because the granting of such a motion is addressed to the sound discretion of the trial court, that decision will not be reversed absent an abuse of discretion.  See Mundy v. Commonwealth, 11 Va. App. 461, 481, 390 S.E.2d 525, 536, aff'd on reh'g en banc, 399 S.E.2d 29 (1990).

> Because of the need for finality in court adjudications, four requirements must be met before a new trial is granted based upon an allegation of newly-discovered evidence: (1) the evidence was discovered after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) is material, and as such, should produce an opposite result on the merits at another trial.

Id. at 480, 390 S.E.2d at 535.  The burden is on the moving party to show that all four of these requirements have been met in order to justify a new trial.  See Carter v. Commonwealth, 10 Va. App. 507, 512-13, 393 S.E.2d 639, 642 (1990).

Jones' prior misdemeanor convictions for assault and battery and being drunk in public were not crimes involving

-

moral turpitude and would not have been admissible at trial to
impeach Jones.

> "Where the purpose of the inquiry is to
> impeach a witness' <u>veracity</u>,
> cross-examination concerning a witness'
> prior convictions is limited to prior felony
> convictions and convictions for misdemeanors
> involving moral turpitude."  Misdemeanor
> crimes of moral turpitude are limited to
> those crimes involving lying, cheating and
> stealing, including making a false statement
> and petit larceny.

<u>Newton v. Commonwealth</u>, 29 Va. App. 433, 448, 512 S.E.2d 846,
853 (1999) (citation omitted).

In addition, Johnson offered no evidence tending to prove
that Jones was motivated to testify or work with the drug task
force by any promises of leniency resulting from the issuance or
disposition of the show cause orders or the capias.  As the
trial judge commented, "You are just surmising that because [the
show cause orders were issued] in the same time period that that
was her motivation, is that correct?"  Johnson's counsel
replied, "Yes, I think that is part of it."

Furthermore, Jones' credibility was impeached at the trial
by proof that she had been convicted of five felonies.  Thus,
even if the evidence of the show cause orders and capias was
somehow admissible, which has not been shown on this record,
that evidence does not constitute significant additional
impeachment of Jones' credibility.  The evidence from a police
officer that Jones had a reputation in the community for being

-

untruthful would have been available at the first trial and could have been available with due diligence.

Finally, the evidence proffered by Johnson was not likely to produce a different result at trial. "Before setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner 'as to leave no room for doubt' that the after-discovered evidence, if true would produce a different result at another trial." Carter, 10 Va. App. at 513, 393 S.E.2d at 642 (citation omitted). Accordingly, the trial court did not abuse its discretion in denying Johnson's request for an evidentiary hearing or his motion for a new trial. The proffered evidence either was not admissible or was not shown to be likely to lead to the discovery of other evidence that would produce a different result at trial. The burden was on Johnson to produce newly discovered evidence to justify an evidentiary hearing or a new trial. The trial court has no responsibility to convene an evidentiary hearing post-trial to enable a defendant to conduct discovery in hopes of finding evidence to impeach the judgment of the court.

Johnson also contends the Commonwealth violated his due process rights by failing to provide him with a copy of Jones' criminal record and information about Jones' relationship with other police departments and the Mecklenburg Circuit Court.

The discovery order entered in the case directed the Commonwealth "to provide the attorney for the accused with the

-

record of any felony convictions or the convictions of any misdemeanor involving moral turpitude of any Commonwealth witness who testifies, such information to be provided immediately upon the conclusion of such witness' testimony in chief."

Due process is violated if the prosecution suppresses requested evidence favorable to the accused and the evidence suppressed is material to guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is "material," and its nondisclosure justifies reversal on appeal, only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).  Johnson has failed to establish a "reasonable probability" that disclosure of the evidence would have affected the trial.  Wood v. Bartholomew, 516 U.S. 1, 5-6 (1995) (no Brady violation for failure to disclose polygraph tests).

The evidence that Jones had prior felony convictions was admitted at the trial during the Commonwealth's direct examination of Jones.  Therefore, Johnson has demonstrated no prejudice as a result of the Commonwealth's failure to disclose that information.

Evidence concerning Jones' prior misdemeanor convictions was not admissible at trial because the convictions did not

-

involve offenses of moral turpitude.  Therefore, any failure to disclose that information did not violate Brady.

Furthermore, given that Jones admitted the felony convictions, her former drug use, and that she was a paid informant, we find there is no reasonable probability that disclosure of additional impeaching information in the form of the show causes and capias would have led the trial court to a different conclusion.  "The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976).  Indeed, Johnson's counsel stated during argument, "I am not suggesting that having her criminal record would necessarily make a difference one way or the other."  Accordingly, there was no Brady or discovery violation.

Therefore, we affirm.

Affirmed.

-

Benton, J., dissenting.

Eighteen days after the trial judge entered the final conviction order, Johnson sought an evidentiary hearing on his motion for a new trial. I would hold that the trial judge abused her discretion in refusing Johnson's request for an evidentiary hearing in support of his motion for a new trial.

The record indicates the grand jury issued indictments alleging that "Mustafaa Johnson a/k/a 'Kat Anderson' or 'Cat'" distributed cocaine on seven different occasions. The record also reflects that the trial judge entered a pretrial discovery order that contained the following:

> It is further ORDERED that the attorney for the Commonwealth turn over or otherwise make available to the accused any and all evidence or information within the possession, custody or control of the Commonwealth which tends to exculpate the accused, including any statements of material witnesses that are inconsistent or which become inconsistent at the time such witness testifies at trial.

At trial, a "state informant . . . working with the drug task force" testified that on six different days (July 9, July 23, August 9, August 20, October 15, and October 29), he was searched and then directed by Investigator Vaughan to Sutherland Avenue where he met a man and purchased cocaine from that man. The state informant, who had not been convicted of a felony or a misdemeanor for lying, stealing or cheating, testified that he could not identify Johnson as the man, known as "Cat," who sold

-

him cocaine.  The trial judge granted Johnson's motion to strike the evidence as insufficient to support those six charges.

Significantly, despite the mandate of the pretrial discovery order, the prosecutor did not disclose that the state informant could not identify Johnson to be the man who sold cocaine to the informant on six separate occasions.  See Roviaro v. United States, 353 U.S. 53, 60-61 (1957) (holding that fundamental fairness requires disclosure of an informer's identity or the content of the informer's communication when it "is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause").  Instead, the prosecutor simply allowed the state informant to disclose this fact at trial, and, in doing so, deprived Johnson of the opportunity to use this exculpatory evidence to its full advantage.

At trial, the prosecutor relied solely upon the testimony of another informant, Linda Jones, to prove the events relating to the seventh event, which the indictment alleged to have been a cocaine sale on November 28.  The record establishes that prior to trial the prosecutor also failed to disclose evidence concerning Jones's prior convictions and violation of her probation.  Both had a significant bearing on her credibility and bias.  See Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Bagley, 473 U.S. 667, 676 (1985) (holding that

-

"impeachment evidence . . . as well as exculpatory evidence falls within the Brady rule").

Denying Johnson's attorney the opportunity to know in advance this impeachment evidence, the prosecutor disclosed it by having Jones testify at trial that she has been convicted five times of felonies and that she acts as an informant for various police entities.  A police officer testified that Jones was being paid $50 for her court appearance.  The officer also testified that Jones was not shown photographs of Johnson before his arrest.  The officer testified he ascertained Johnson was the seller "by the nickname he was going by, by Cat."  Jones then identified Johnson at trial as the person known as "Cat" and testified that Johnson sold cocaine to her on November 28. Obviously, if Johnson had been given this impeachment information pre-trial (and told of the other informant's inability to identify him), he could have used it to prepare his cross-examination of Jones.  See Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 733 (1985) (holding that "[o]ne purpose of cross-examination is to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest"); Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984) (noting that the Supreme Court of Virginia has "consistently held that the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute"); Keener v.

-

Commonwealth, 8 Va. App. 208, 213, 380 S.E.2d 21, 24 (1989) (holding that failure to disclose information about an informer who was an active participant in the event will almost always be material to the accused's defense).

In connection with his motion for an evidentiary hearing, Johnson's attorney filed an affidavit from an investigator asserting that a show cause order, requiring Jones to demonstrate why she should not be remanded to prison for twenty-five years, was served on Jones two weeks before the day she alleges Johnson sold her cocaine. The affidavit further asserts that Jones has used four different names and two different social security numbers and that a police officer would testify that Jones has a reputation for untruthfulness and dishonesty. During argument on his motion, Johnson's attorney additionally proffered he was not aware that Jones would testify at trial, that he had not been given a report of Jones's criminal record, that a police officer would testify that Jones stole money from him, that the evidence would establish Jones implicated Johnson as a means of avoiding a prison sentence, and that this evidence would tend "to show [Jones] has perjured herself on the stand . . . and . . . goes to impeachment of testimony on the stand."

In response, the prosecutor admitted that Jones's formal conviction "record today . . . doesn't show any felony convictions." The prosecutor represented to the judge that he

-

"knew from prior times [when she testified] that she had four prior felonies because [he] had repeatedly pulled the records." The record indicates, however, that Jones testified she had been convicted of five felonies. The prosecutor also confirmed that Jones "worked as an undercover person in Mecklenburg County," and he observed "that some police department officials feel she is reliable. Some don't."

The standards for granting a motion for a new trial are well established.

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. . . . The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387 (1984). The rule is also well established that allegations in an affidavit may be sufficient to require the judge to conduct an evidentiary hearing on a motion for a new trial. See Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 333 (1986); Evans v. Commonwealth, 39 Va. App. 229, 239-40, 572 S.E.2d 481, 486 (2002).

-

There are cases in which a convicted person's entitlement to a new trial is apparent from facts conceded to be true or on the record alone. Where, however, a convicted person's entitlement to a new trial turns on facts that are disputed, the convicted person has the burden to establish entitlement. In this latter class of cases, the accused ordinarily must be given the opportunity to introduce evidence to support the motion. See e.g. Dozier v. Morrisette, 198 Va. 37, 40, 92 S.E.2d 366, 368 (1956) (holding that the trial judge "properly" held a hearing in view of the affidavit in support of a motion for a new trial); Evans, 39 Va. App. at 240, 572 S.E.2d at 486 (holding that "the trial judge should not have dismissed [the] motion [for a new trial] without first conducting an adequate investigation upon evidence properly presented at a hearing").

In this case, the proffer was sufficient to establish that Johnson could present evidence probative of the issues the trial judge was required to determine in ruling on Johnson's motion for a new trial. The proffer and the record demonstrate that "[t]he evidence could not have been discovered prior to trial even through the exercise of reasonable diligence and could, if believed, have produced a different result at another trial." Whittington v. Commonwealth, 5 Va. App. 212, 215, 361 S.E.2d 449, 451 (1987). In addition, and pertinent to the determination whether to grant a new trial, the proffer

-

established that "the witness sought to be impeached is 'the key prosecution witness.'"  Id. at 216, 361 S.E.2d at 452.

In view of the proffer, the prosecutor's unsubstantiated vouching for the accuracy of Jones's testimony about her criminal record, and the undisputed failure of the other prosecution witness to identify Johnson as the same "Cat" who sold him cocaine on six separate occasions, I believe Johnson was entitled to the opportunity to present evidence in support of his motion for a new trial.  Thus, I would hold that the trial judge abused her discretion in refusing to suspend the judgment, see Rule 1:1, and in failing to order an evidentiary hearing.