COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued at Salem, Virginia


PHILLIP WAYNE LINKOUS, JR.
                                              MEMORANDUM OPINION* BY
v.       Record No. 2725-02-3                 JUDGE ROBERT P. FRANK
                                                 DECEMBER 16, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                            Ray W. Grubbs, Judge

             Thomas L. DeBusk for appellant.

             Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
             Attorney General, on brief), for appellee.


        Phillip Wayne Linkous, Jr., (appellant) was convicted in a bench trial of attempted rape,

in violation of Code § 18.2-61; rape, in violation of Code § 18.2-61; and incest, in violation of

Code § 18.2-366.  On appeal, appellant contends the trial court erred in finding the evidence

sufficient to convict him of these three offenses.  He argues the victim recanted her story after

trial, which invalidated the convictions.  Appellant also argues the trial court erred in denying his

motion to continue a post-verdict hearing.  We find the evidence was sufficient to convict

appellant, and we find the trial court did not abuse its discretion when it refused to grant

appellant's motion for a continuance.  Therefore, we affirm the convictions.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

J.L. was 15 years old at the time of these incidents. She lived in a house with her parents and two of her brothers, Matthew and Isaac.[1] A third brother, appellant, lived with various other family members in different houses. Although a court order required appellant to have no contact with J.L., he frequently visited his parents' home and the home of his grandparents, who lived next door to his parents.

At trial, J.L. testified regarding two incidents of sexual assault. The first incident began in late February 2001, when Isaac told J.L. that appellant wanted to know if she would have sex with appellant. Appellant included a threat to beat up J.L. and her boyfriend if J.L. refused. J.L. refused. Appellant sent Isaac back to J.L. with the same request several times.

Although she had refused him, appellant went into his parents' home at night and knocked on the door of J.L.'s basement bedroom. J.L. admitted him. Isaac saw him go into the room. Once in the room, appellant got on top of J.L. He put his mouth on her vagina. She told him to stop. Appellant offered J.L. his "whole paycheck" if she would consent to have sex with him. She again refused. Appellant held her down and attempted to put his penis into her vagina. J.L. repeatedly told appellant to stop. J.L. cried out, but her parents, who were sleeping upstairs, did not respond. The appellant put on his clothes and told J.L. that he would kill her if she told anyone. J.L. testified this encounter lasted thirty minutes to an hour. Isaac testified appellant was in J.L.'s room for two to three minutes.

In March of 2001, another incident occurred in J.L.'s bedroom. Again, Isaac told J.L. that appellant wanted to "sleep" with her. J.L. said no. Again, appellant came to J.L.'s bedroom. J.L. was on her bed in her nightgown and underwear, talking on the phone to her boyfriend.

---

[1] Matthew was nineteen years old and Isaac was fourteen years old at the time of the trial.

Appellant said he had forgotten some drugs on top of J.L.'s stereo. After J.L.'s conversation with her boyfriend ended, appellant got on top of J.L., pulled down her panties, and put his penis into her vagina. J.L. yelled and told him to stop. J.L. testified he ejaculated on this occasion. Afterwards, appellant told J.L. that he would kill her if she told anyone.

After these incidents, J.L. switched mattresses with Isaac because she "couldn't sleep on it" anymore.

At trial, Isaac corroborated his sister's testimony regarding the first incident. However, he admitted telling the prosecutor on the morning of the trial that everything he said about appellant was a "bunch of lies." Isaac told the trial court that he lied to the prosecutor because he did not want to see appellant, his brother, get in trouble. Isaac said he testified truthfully. Isaac also admitted telling his parents that J.L. had offered him money to testify against appellant. He claimed he never received any money. J.L. denied offering any money to Isaac.

According to the testimony of Investigator Norman Croy, the reports made to him by J.L. and Isaac were essentially consistent with their trial testimony. However, he did testify that J.L. initially told him that appellant had sexual intercourse with her during the first incident.

Appellant denied having sexual intercourse with J.L. when interviewed by Croy. Appellant said his DNA would not be found on the bed. However, appellant changed his story and said his DNA could be on the mattress because he had sexual intercourse with his girlfriend on J.L.'s bed. J.L.'s mattress, which Croy recovered from the house, had three stains on it that contained appellant's semen.

The father testified that J.L. told him "a couple of months" before trial that she was calling her probation officer to tell him that her allegations against appellant were lies. The father saw J.L. make a call, but he did not testify that he heard any conversation. The father also

testified that sound "carries" from the basement, and he hears "a lot of things" from the basement.

Matthew testified that J.L. would have to yell "real loud" from the basement before anyone could hear her shouts. Although Matthew previously told Investigator Croy that he saw appellant "locked up" in J.L.'s room and that he heard J.L. "yell out," he testified at trial that he had not heard J.L. nor seen appellant in J.L.'s room. When confronted with the signed statement relating his statement to Croy, Matthew claimed he could not read, and he did not sign the form.

At trial, appellant denied the charges. He claimed his sister hated him for some unknown reason. He said he did not know why his brother, Isaac, would lie about these events. Appellant admitted he had a felony and a theft conviction.

Appellant's mother testified he telephoned her from jail. She said, "[H]e was wanting me to tell that he had been at his [older] sister's the whole time" and never spent any time at his grandparents' house, which was next door to J.L.'s home. The mother told him, "I was not going to lie for him or any of my kids." Appellant denied calling his mother. The mother also testified if J.L. had screamed, she would have heard her, since she was "not a very heavy" sleeper.

The trial court convicted appellant of rape, attempted rape, and fornication, but acquitted him of the sodomy charge. In convicting the appellant, the court made the following findings:

> [A]fter fully considering the evidence and the credibility of the
> witnesses, the court is convinced that certain sexual activity did
> occur between Phillip and [J.L.] on the two occasions alleged.
> Regarding first of all the count of attempted rape, Mr. Linkous, the
> court finds you guilty as charged. The complainant made a, quote,
> rape complaint, to her school counselor within about two months
> of the alleged offense. The complaint to the counselor and later to
> Investigator Croy were consistent. To the extent that the defendant
> had the intent to engage in sexual intercourse with his sister, the
> complainant's testimony is corroborated by her brother, Isaac.
> Absent any crying out, in quotes, there is yet credible evidence that
> the attempted sexual act was against [J.L.'s] will, accompanied by
> force however slight. I find the Commonwealth has proved each
> and every element of this offense beyond a reasonable doubt.

> Regarding the count sodomy, the court finds the defendant is not guilty. The evidence does not show beyond a reasonable doubt that the tongue of the defendant penetrated the female sex organ. Regarding the count of rape, Mr. Linkous, the court finds you guilty as charged. [The DNA evidence] is compelling that sexual intercourse occurred between the defendant and his sister. [That] testimony offers certain corroboration of [J.L.'s] complaint, once again to the counselor and to Investigator Croy. . . . With regard to the misdemeanor charge of incest, the court finds Mr. Linkous guilty of fornication with his sister, whom he is forbidden by law to marry.

The court set the case for sentencing, and the case was continued several times. On April 12, 2002, appellant filed a motion to set aside the verdict, based on alleged perjury at trial. The motion cited Isaac's recantation on the morning of the trial and Isaac's testimony that J.L. offered him money to testify. On May 6, 2002, appellant filed a second motion to set aside the verdict. That motion was based on a recantation by J.L., who executed an affidavit stating she was pressured into false testimony by threats from her former boyfriend.

As a result of these motions, the Commonwealth and the defense agreed that appellant and J.L. would submit to polygraph examinations. The parties waived any objection to the admission of the test results.[2] A polygraph test was administered to appellant on July 22, 2002, and to J.L. on August 6, 2002.

On September 10, 2002, the defense filed a motion to continue the proceedings from September 13, 2002, because his polygraph expert was not available for that hearing date. The Commonwealth opposed the continuance.

The court conducted a hearing on September 16, 2002. At the beginning of the hearing, appellant argued his motion for a continuance. The trial court denied the request. The court noted appellant was convicted in January and several defense continuances were granted

---

[2] The Supreme Court in <u>Lee v. Commonwealth</u>, 200 Va. 233, 237, 105 S.E.2d 152, 154-55 (1958), ruled the results of a polygraph test are not reliable and therefore exclusion of such evidence is not error. However, the parties here agreed the test results would be admissible.

previously. The trial court also noted that the parties had agreed on the admission of the polygraph tests. The court stated:

> When I consider this motion, I don't know of any other case in which this court has afforded the defendant such post-trial consideration in testing the integrity of his verdict. Every reasonable means have been taken post-trial to assure the credibility of the trial proceedings. That having been said, I see no further cause for delay . . . .

The court then heard evidence on the motions to set aside the verdict. Isaac testified he had lied at trial because J.L. "was supposed" to give him $100, money he never received. Upon questioning, Isaac initially said he could not remember when J.L. bribed him to testify falsely, but subsequently said it was about a month before trial. Isaac acknowledged he had inculpated appellant in a statement to the police months before J.L. allegedly offered him money to "lie."

J.L. testified appellant did not have sex with her. She claimed she lied because her ex-boyfriend had threatened to kill her and her mother if she did not implicate appellant. She said she had decided to tell the truth because she could not see her brother going to jail "for nothing," and because she found out her ex-boyfriend was incarcerated. J.L. acknowledged that she was living at home with her parents. She acknowledged they were "upset with [her] at first [for bringing the rape charge] and then I told them the truth and they told me to do the best thing that I should do." J.L. said she told the truth during the polygraph examination.

Agent T.S. Svard of the Virginia State Police testified that both he and his superior examined the results of the two polygraph tests. He stated the test results indicated that J.L. and appellant were deceptive when they said they never had sexual intercourse. On cross-examination, appellant attempted to attack the reliability of the polygraph.

In denying the motion to set aside the verdict, the trial court found no improper conduct on the part of any agent of the Commonwealth. The court noted it was aware throughout the proceedings of Isaac's contradictory testimony. The trial court stated it had observed the

- 6 -

demeanor of the witnesses on the stand and assessed their credibility. The trial court considered the results of the polygraph, "in addition to considering the testimony throughout all these proceedings, the chronological order in which all the events have taken place, and again in weighing their credibility," and concluded the trial testimony was reliable.

ANALYSIS

A. Sufficiency

Appellant appeals the trial court's denial of his motions to set aside the verdicts. He essentially makes two claims: (1) the evidence at trial was insufficient due to inconsistent statements and impeachment evidence and (2) evidence discovered after the guilt phase of the trial proved J.L. and Isaac lied at trial. He contends that, if J.L. and Isaac had not testified, then the evidence at trial would have been insufficient. We find the trial court did not err in refusing to reject the trial testimony of J.L. and Isaac.

When considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "In so doing we must '"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."'" Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954))). The trial court's judgment will not be set aside unless plainly wrong or without evidence to support it. Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (*en banc*).

- 7 -

First, appellant alleges numerous inconsistencies exist between J.L.'s trial testimony and her previous statements and between her statements and Isaac's statements. He also contends the trial testimony of J.L. and Isaac was impeached, both at trial and by their subsequent recantations. These matters concerning inconsistencies and impeachment relate to the credibility of the witnesses. "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998). We find nothing in the record to suggest we should take over the fact finder's role in this case.

Second, appellant asserts the jurisprudence of "after discovered evidence" is relevant to this analysis. He argues that, because two crucial witnesses recanted their statements, the prosecution's case was effectively negated. Keeping in mind appellant argues sufficiency only and does not request a new trial, we will consider the application of an after-discovered evidence analysis here.[3]

The opportunity and temptation for fraud which accompany a motion for a new trial based on after-discovered evidence require that such a motion be approached guardedly. Lewis v. Commonwealth, 193 Va. 612, 625, 70 S.E.2d 293, 301 (1952). Therefore, such a motion should be received cautiously, awarded with great reluctance, and addressed to the sound discretion of the trial court. Whittington v. Commonwealth, 5 Va. App. 212, 215, 361 S.E.2d 449, 451 (1987). In a motion for a new trial based on after-discovered evidence:

> [t]he applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative,

___

[3] We note that after-discovered evidence issues usually arise in the context of a motion for a new trial, not a motion to set aside the verdict.

> corroborative or collateral; and (4) is material, and such as should
> produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).

As to Isaac's recantation, appellant does not meet the first burden of this test because the same evidence was explored at trial during both direct and cross-examination. Appellant refers to Isaac's statement that he was promised money to testify against appellant and his alleged admission to the prosecutor on the morning of trial that he lied to implicate appellant. At trial, both of these statements were brought to the attention of the trial court. The prosecutor confronted Isaac about his recantation earlier that day. Isaac testified that the recantation was a lie, and he affirmed his testimony that appellant had him solicit J.L. for sex. During cross-examination, Isaac admitted telling his parents that J.L. offered him money to testify against appellant. Clearly, this evidence was before the court during the trial and thus not discovered after the trial. Appellant did not meet his burden to show Isaac's recantation was "after discovered."

The "after discovered evidence" regarding J.L.'s testimony was her recantation of the trial testimony that appellant did not sexually assault her. Again, this issue was raised during the trial. Appellant's father testified that J.L. said she was going to tell her probation officer that the allegations against appellant were a lie. The father saw J.L. making the call several months before the trial. Again, J.L.'s recantation was not discovered after the trial.

More significantly, the recantations would not have "produced opposite results." Here, appellant did not ask for a new trial. He asked the trial court, as the fact finder, to reconsider the sufficiency of the evidence based on the recantations. The trial court, as the fact finder in the bench trial, considered the testimony of Isaac and J.L. at the hearing to set aside the verdict. The

court rejected their recantations. The trial court concluded the trial testimony was more reliable than the testimony at the hearing. The evidence supports the trial court's conclusion.

At the trial, DNA evidence corroborated the sexual assault. At the later hearing, polygraph tests indicated J.L.'s recantation and appellant's denials were false. Isaac's and J.L.'s statements given to the police prior to trial provided further indicia of the credibility of the trial testimony. The trial court accepted J.L.'s and Isaac's trial testimony as "reliable." The trial court rejected the explanations provided by J.L. and Isaac for their "lies" to the police and during the trial.

The trial court, in reconsidering the sufficiency of the evidence, was satisfied the evidence supported the earlier finding of guilt. As fact finder, he rejected the recantations, which was within his discretion. Marable, 27 Va. App. at 509, 500 S.E.2d at 235. Thus, we conclude the trial court did not abuse its discretion in denying the motion to set aside the verdict.

CONTINUANCE

Appellant contends the trial court erred in denying a continuance of the hearing on his motions to set aside the verdict. In his motion for a continuance, appellant indicated his polygraph expert was not available on the September 13, 2002 hearing date. Appellant requested a continuance to any of three dates available to his expert. On September 16, 2002, appellant's counsel told the trial court he did not receive the polygraph results until September 3, 2002, and he was not able to contact an expert who would be available on September 13, 2002. In denying the motion for the continuance, the trial court recited the chronology of the case, noting appellant was convicted on January 4, 2002, with sentencing set for March 15, 2002. The court recalled appellant had continued the case several times. The trial court concluded, "I don't know of any

other case in which this court has afforded the defendant such post-trial consideration in testing the integrity of his verdict."[4]

Whether to grant or deny a continuance is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong. Lomax v. Commonwealth, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984); Parish v. Commonwealth, 206 Va. 627, 631-32, 145 S.E.2d 192, 195 (1965). Under these circumstances, we cannot say that the trial court abused its discretion in denying the continuance. Appellant continued the case numerous times. He knew the date of the hearing prior to receipt of the polygraph results. Nothing prevented him from finding an expert who was available on that day, even though he did not yet have the results of the examinations.

CONCLUSION

We find the trial court did not abuse its discretion in denying the motion to set aside the verdict and in denying the motion for a continuance. Therefore, we affirm the convictions.

Affirmed.

---

[4] Appellant did not ask for a continuance because his expert lacked adequate time to prepare his testimony. Instead, he simply claimed his expert was not available on that date. Appellant did not proffer why his expert was not available, nor did he suggest any scenario here the trial court might have accommodated the expert's schedule on the date set for the hearing. Appellant did not proffer the expected testimony of the expert.